### RANDELL HUNT and another *v.* THE ORLEANS COTTON PRESS COMPANY.

Where no special contract has been made, the compensation of advocates and attorneys must be regulated, in a great degree, by the nature of their services. The difficulties of the case, the amount in controversy, and other attending circumstances, must be considered, in connection with the physical and mental labor, and the responsibility incurred.

APPEAL from the District Court of the First District, *Buchanan*, J.

GARLAND, J. The plaintiffs were the counsel for the defendants in the suit of The Second Municipality of New Orleans against them, which was decided in this court about one year since, and having, as they allege, conducted it to a favorable issue, are compelled to ask the aid of the courts to obtain the compensation to which they consider themselves entitled. This course, they allege, was not adopted, until all efforts to compromise, or to refer the controversy to impartial arbitrators, had been rejected by the defendants.

When the plaintiffs undertook the defence of the above mentioned case, the defendants agreed to give them a retaining fee of $3000, and in the event of success they were to give "a generous

compensation, commensurate with the importance of the matters in controversy."

The property in controversy is proved to have been worth about $500,000, and a witness swears that he would have charged as a fee, from two and a half to five per cent on the amount. That he thinks $10,000 to each plaintiff, not unreasonable as a contingent fee. Other witnesses seem to think that too much, and none of them fix any sum, except by reference to the fees that were promised to other counsel who were associated with the plaintiffs. It appears that, after the plaintiffs were retained under the agreement before stated, a meeting of a number of persons who owned property in the neighborhood, whose titles were supposed to depend on the same questions, was held, and that among those present was the President of the Cotton Press Company. At this meeting it was agreed that these proprietors should pay a part of the expense of defending the suit, and that additional counsel should be employed. This was all done without consultation with the plaintiffs ; and it was agreed to pay these associate counsel $2000 each, as a retaining fee, and a liberal compensation in the event of success, which compensation was afterwards fixed at $5000 for each of the counsel, by a committee representing these proprietors. That body fixed the fee of the plaintiff Hunt, at $5000, and that of Lockett at $2000 ; and offered to give bonds for the amount, payable in 1846, with interest at six per cent per annum, which was refused.

It was admitted on the trial, that the plaintiff Hunt had discharged his duty in a faithful and able manner. It was proved that Lockett took a part in the trial of the case in the inferior court, and was instrumental in procuring testimony, but that he did not argue it in this court on the appeal. The testimony is not very ample as to the extent of his services ; but there is no charge that he neglected his duty or abandoned the case. It is further shown that, soon after Hunt and Lockett were retained, the latter recommended the defendants to employ Eustis, as associate counsel. The proposition was submitted to the committee of proprietors, and they declined doing so ; but after the Parish Court had decided the case against them, one of this committee suggested the employment of Eustis, and it was agreed to.

The District Court thought each plaintiff entitled to a fee of $7,500, and, after deducting a payment of $500 made to Hunt, gave him a judgment for $7000; and because Lockett had recommended the employment of Eustis, deducted $2,600 from the amount coming to him, and gave a judgment for $4,900, and interest; from which judgment the defendants have appealed.

In this court the plaintiffs claim to have the judgment amended, and $10,000 allowed to each, as originally demanded; and Lockett particularly desires, that he may be relieved from the payment of more than one half of the fee paid to Eustis.

It is well settled that, where no special contract exists as to the amount of compensation which advocates and attorneys are to receive, their fees are to be, in a great degree, regulated by the services they render. The difficulties of the case, the amount in controversy, and other attending circumstances, are to be considered, in connection with the physical and mental labor it was necessary to undergo, and the responsibilities under which the counsel acted. On the other hand, it should be remembered that the profession of the law is not one that is pursued for lucre only. Its professors should, and generally do remember, that they form a class of the community who are in some degree compensated for their labor, and the time spent in anxious search after knowledge, by the respect and regard entertained for them generally, and by the opportunities, so often afforded, of impressing on the age in which they live, the spirit and genius which animate them. To an elevated mind this is a high reward.

With the plaintiffs, distinguished as they are in the profession, were at first associated three other gentlemen standing in its front ranks, with a retaining fee of $2000 each; and, subsequently, another, in no wise their inferior, was added. After the decision of the case, each of those gentlemen consented to receive $5000, as their contingent fee. It is very true that the plaintiffs were not consulted as to the employment of these associates; but they knew that they were engaged, and acted with them. We think all the counsel should, as to compensation, be put on the same footing; and as three of those last employed received retaining fees of $2000 each, we shall consider that in forming our judgment.

As to compelling Lockett to pay $2,600 of the fee of Eus-

tis, we can see no reason in law or equity for it. When the former suggested the employment of the latter, the committee, representing the defendants, declined acceding to it. More than a year after, when the defendants had lost their case in part, Eustis was employed on the suggestion of one of the committee. As to the services rendered, the defendants never complained until called on for payment. There is nothing in the evidence to induce us to make any distinction between Lockett, and those with whom he acted.

The plaintiff Hunt, having received $500 on account, we will apply it in such a manner to his demand, as to make him equal to the other counsel who were associated with him.

The judgment of the District Court as to the plaintiff Randell Hunt, is therefore annulled, and it is ordered that he recover of the defendants, the New Orleans Cotton Press Company, the sum of five thousand dollars, with legal interest from the 4th of December, 1841, until paid ; and as to the plaintiff Henry Lockett, we order and decree that the judgment of the inferior court be amended in his favor, and that he recover of the aforesaid defendants the sum of five thousand five hundred dollars, with legal interest from the date last aforesaid, until paid. The costs in the District Court to be paid by defendants ; those of the appeal to be paid in equal portions by them, and the said Randell Hunt.

*Roselius*, for the plaintiffs. *Hoffman*, for the appellants.