## SUCCESSION OF LEVINIA HICKMAN.

The decree of homologation of the proceedings of a family meeting authorising the tutor of a minor to borrow money, is a sufficient protection to the lender of the money, who is not bound to see to the judicious application of the money.

A clause in the nature of an antichresis in an act of mortgage, does not vitiate the instrument.

Where the use of slaves was given in lieu of interest for money loaned, and there was a great disproportion between the value of the services of the slaves and the rate of conventional interest—*Held* : That it will be presumed that the contract was intended to secure usurious interest.

APPEAL from the District Court of East Feliciana, *Ratliff*, J.
*Bowman & Delee*, for appellants. *Muse & Hardee*, for appellee.

MERRICK, C. J. This case was before us last year. See 12 An. The present appeal is from the judgment upon an opposition to the final account of the administrator.

We will consider the items objected to by opponents in the order in which they have presented the same in the brief.

I. The first item opposed is that allowed the attorneys for defending the former suit and filing the present account. It is clear that the services of counsel in the former suit were for the individual advantage of the administrator, and as he was condemned to pay the costs, there is no pretence for charging counsel fees to the opposite party. Probably the administrator should be allowed for attorney's fees, for filing the present account, to the amount, say, of fifty dollars.

II. The next item objected to was a mortgage note of $500 paid by the administrator to *Mrs. Mary Sturgis*. The note was given by the former tutor of the minors, under the advice of a family meeting duly homologated, to raise money to pay debts. The decree of homologation was a sufficient protection to the lender of the money, and she was not bound to look beyond the decree in order to ascertain whether any debts of the succession were laid before the family meeting or not, neither was she bound for the judicious application of the money to the payment of the debts by the tutor after she had placed the money in his hands. See *Rhodes* v. *Union Bank*, 7 Rob. 63, and authorities there cited.

The Judge authorized the former tutor to borrow money upon a mortgage of the slaves. The act in favor of *Mrs. Sturgis*, by which the money was borrowed, was in the usual form of a mortgage, and so far in conformity with the order, but it also contained a stipulation that the mortgagee should have the use of the negroes in lieu of interest. We are of the opinion that the clause in the nature of an antichresis did not vitiate the instrument as a mortgage. C. C. 3148.

The question of usury in reference to the administrator who paid the note in full, without obtaining a deduction of the large excess in the value of the services

of the slaves over the interest, depends upon the fact, whether the difference is so considerable that it must be presumed that the contract was intended to secure usurious interest upon the money loaned; for the administrator of the succession of *Mrs. Lavinia Hickman* (although acting in good faith) by taking up the debts made by a former tutor to her minor children, without any order of the Judge or tableau of distribution, cannot acquire any greater rights than the creditor held. The services of the negroes were at that time worth at least $120 a year, and the interest was but forty dollars; the difference is so considerable that the contract must, under the authority of *Galloway* v. *Legare,* 4 N. S. 169, and *Baker* v. *Garlick,* 9 Rob. 127, and in the absence of explanatory testimony, be held to be usurious, and the interest forfeited. Deducting the account for clothing and medical bill from the value of the services of the two negroes, it leaves $96 25, which must be credited on the note. Item Number 10 must, therefore, be reduced to $403 75.

III. The next item objected to is for $325 money alleged to have been loaned the deceased by the administrator. The testimony is insufficient to show that this sum enured to the benefit of the separate estate of deceased. Moreover, the testimony was incomplete, inasmuch as the act of sale was neither produced nor accounted for. But we do not think that the administrator ought to have a final judgment against him on this item, as he may hereafter be able to establish the same.

IV. In regard to the costs, it is clear, that the former decree condemned *G. W. Flannigan,* individually, to pay the costs in that case. The decree was affirmed by this court, and those items of costs could not be carried to the credit of the administrator in the present account.

As the opposition in this case is made for the purpose of charging the administrator with the hire of negroes not allowed in his account, and to reduce his individual claims against the succession, in both of which particulars the opposition was sustained, he must be charged with the costs of the *opposition.*

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be so amended as to reduce item No. 8 to the sum of $50, and item No. 10 to the sum of $403 75; and to reject item No. 15 for $335, the administrator being authorized to claim a credit for the same if he be entitled thereto in any subsequent account; and that said decree be further amended so as to charge the administrator with the costs of the opposition, and that said judgment so amended be affirmed, the said *George W. Flannigan,* paying the costs of the appeal.