No. 6971.

30   463<br>f123  513

SUCCESSION OF D. P. JACKSON. OPPOSITION OF HEIRS TO PROVISIONAL
ACCOUNT OF ADMINISTRATRIX.

The decree of the lower court will not be disturbed on the ground of its alleged non-
conformity to evidence not submitted to the inspection of this court.
Where it appears that the services of an attorney in settling up the complicated
affairs of a succession have been long continued, wisely directed, and valuable,
this court will be guided as to the money value of his services (in the absence of
special agreement as to his fees, and of specific evidence as to the extent of his
services) by the opinion of the local bar to which he belongs.

APPEAL from the Parish Court of Tensas. *Cordell, J.*

*Wade R. Young* for opponents and appellants.

*St. Vincent Reeves* for administratrix and appellee.

The opinion of the court was delivered by

MARR, J. May E. Wood, James Jackson, and Kate A. Bailey, chil-
dren and heirs of Dempsey P. Jackson, opposed the provisional account
of the administratrix, their mother. The parish court maintained their
opposition with respect to the amount claimed for fees of the attorney
for the succession, which was reduced $300; and the account was homol-
ogated as rendered in all other respects. The heirs appealed; and the
administratrix asks in her answer that the judgment be so amended as
to allow the full amount charged in the account.

Before proceeding with the case we think it proper to say that a
paper styled the protest of the heirs was filed in the parish court, and
is copied in the transcript, which the parish judge should not have
allowed to be filed. It could not have been written by or under the
advice of a lawyer; nor would any respectable lawyer have sanctioned
it. The counsel for the heirs asked us not to notice it; and he repudiated
it as soon as he was employed in the case. It is couched in such terms
and manifests such temper and spirit as should not be tolerated in a
judicial proceeding, and should not be permitted to pass unrebuked.
The parish judge should have reprimanded any member of the bar who
would have ventured to offer and file such a paper; and he should have
stricken this paper from the files of his court.

The opposition to the other items of the account rest upon the
allegation that they are in excess of the amounts actually paid by the
administratrix, as evidenced by the vouchers. The vouchers are not
copied in the transcript; and we can not question the sufficiency of testi-
mony not submitted to us which was submitted to the parish judge.
We must presume that the judgment was in accordance with the vouchers
which were exhibited; and that it is correct, so far as the items in ques-
tion are concerned.

Dempsey P. Jackson lived in Adams county, Mississippi, where he died in 1874. He had owned a plantation in Tensas, which, some time before his death he conveyed to his wife in payment of her paraphernal claims, amounting to $13,664. The immediate cause of his making this conveyance was the pressure of certain large debts, on which suits were threatened. The conveyance was made under the advice and with the assistance of Messrs. Reeves and Farrar, who were then partners. Mr. Farrar testifies that he considered the conveyance to be valid; but he has no doubt that Jackson made it in view of the threatened suits. Jackson informed Mr. Farrar, some time after the conveyance was made, that he had settled these claims.

The title to the entire property was in Mrs. Jackson at the time of her husband's death; and the conveyance was recorded in Tensas parish. There was no retrocession; nor is there any proof of the existence of any counter letter or other similar writing.

Jackson was largely indebted at the time of his death; and, among others, he owed H. S. Buckner, of New Orleans, some $7000. There was reason to apprehend that suit would be brought to set aside the conveyance to Mrs. Jackson, and to subject the property to the claims of Jackson's creditors. It was, therefore, deemed advisable to have the property administered as belonging to the succession of Jackson; and the whole was inventoried as if the title had been in him at the time of his death. The appraisers state in the inventory that it was represented to them that the property belonged to the community.

Mrs. Jackson qualified as administratrix; and it was through the influence of Mr. Reeves that a responsible citizen of Tensas parish became her surety on the bond required of her. She and her children, the heirs of her husband, joined in a mortgage to Buckner; and it was by the agency of Mr. Reeves that this arrangement was consummated, by which the apprehended suit was avoided.

Precisely how or upon what theory the property was brought back into the succession we are not informed; and Mr. Farrar, who assisted in making the conveyance to Mrs. Jackson, frankly confesses that he does not know how that was accomplished. As between Jackson and his wife, during his life, the conveyance was conclusive against him, in the absence of a counter letter, or some equivalent writing; and after his death his heirs were equally concluded.

Perhaps, after the death of Jackson, Mr. Reeves had an opportunity to examine papers left by Jackson, and to obtain information of which he was ignorant at the time the conveyance to Mrs. Jackson was made, which satisfied him that a suit by the creditors of Jackson to subject the property could not be successfully resisted; and to avoid the scandal of a litigation, based upon the fraud of the deceased and his widow, whom

the heirs describe as "our aged and infirm mother," it was wise in Mr. Reeves to advise, and wise in Mrs. Jackson to consent, that the conveyance to her should be ignored, and that the property should be administered as belonging to the succession, without respect to a title which neither Mr. Reeves nor Mrs. Jackson was willing to rely upon as against Jackson's creditors.

The age, experience, and reputation of Mr. Reeves preclude the theory that he advised Mrs. Jackson to abandon to the succession and to the creditors of her husband property which she held by a just and legal title. As we do not know what trouble, labor, and skill were necessary to enable Mr. Reeves to advise Mrs. Jackson properly, in view of his duty and obligation to protect her interests as well as the interests of the succession, we have no standard by which we can estimate the pecuniary value of this part of his services. His position was one of delicacy and of responsibility; and if he erred it was to the prejudice of Mrs. Jackson, not to the injury of the succession or of the heirs. The succession was benefited to the extent of the value of the property thus restored to it; and the heirs will be benefited to the extent of the residue which will fall to them after the payment of the debts. Surely the heirs have no right to complain that this large property was brought back into the succession by the voluntary act of their mother under the advice of her counsel.

In the last year of Jackson's life, he had, by contract in writing, leased the plantation in question to colored laborers. After the death of her husband Mrs. Jackson considered the contract as abandoned; and she made a verbal contract with the laborers, the effect of which was to give her a larger share of the crop than she would have had under the lease granted by her husband. Some eight or ten suits were brought by persons claiming liens on the crop for supplies furnished the laborers under the lease granted by Jackson. There was much complication in the affair; but the whole was compromised and settled through the agency of Mr. Reeves; and the succession had the benefit of the crop in accordance with the verbal contract with Mrs. Jackson.

There was a suit brought by the administratrix against Dreyfus for four bales of cotton, which was decided against her; and there was a suit brought by Muldoon against the administratrix which resulted in a judgment in his favor for some $300. Mr. Reeves represented the administratrix in both these cases.

It was proven that Mr. Reeves assisted in the taking of the inventory; and that he made a compromise with Watson, a creditor, by which $500 were saved to the succession. It seems that Mrs. Jackson cultivated the plantation in 1875, and that she met with heavy losses. By the advice and with the assistance of Mr. Reeves, she leased the prop-

30

erty for three years, by authority of the parish court, at $4000 for 1876,. and $5000 for each of the years 1877, 1878; and Mr. Reeves believed that this arrangement would enable the administratrix to pay the debts of the succession, and to save the property.

It was agreed by Mrs. Jackson and Mr. Reeves, in writing, to leave the amount to be paid him for his professional services to the opinion of the members of the St. Joseph bar. They agreed upon $1200, as proper compensation for his services to date, January, 1876. Mr. Reeves testified that he considered the fee in the Muldoon case included in this. award. Subsequently, in January, 1877, he prepared and filed the provisional account, for which it is proven that $100 would be a proper fee;. and it is also proven that $50 would be a reasonable fee for the services of Mr. Reeves in the Dreyfus suit, in the parish court, and in the district. court on appeal; making total for fees $1350. Mrs. Jackson paid $500 on account, after the award of the members of the bar, leaving balance of $850, the amount put down in the account.

The account shows that Mrs. Jackson received from the crops and other sources the sum of $11,423 09; and that she had disbursed $11,431 12. According to this account there remained unpaid $5571 79 to Buckner, and $850 to Reeves, making total unpaid $6421 79. No part of the rent money figures in the account; nor does it include the $500 paid to Mr. Reeves, nor any charge for the commissions of the administratrix. There is nothing in the record to create a doubt as to the payment of the rent; and if it be paid there will be a large surplus after discharging the debts put down in the account as not paid.

It is evident, therefore, that the services of Mr. Reeves have been valuable, and that his management was wise and most beneficial to the succession. The proof shows that Mrs. Jackson consulted him very frequently. She lived in another State; and much of the details of the administration must have devolved upon him. He made the negotiation with Mr. Buckner, and visited New Orleans for that purpose, probably more than once. If there had not been a satisfactory arrangement with Mr. Buckner there would probably have been an expensive litigation, of a very disagreeable character, the result of which might have been the forced sale of the property, for cash, at a sacrifice, and the loss of the whole to the heirs.

There are standards by which the fees of attorneys for the management and conduct of suits, the collection of money, and the recovery of property, etc., can be fixed; but for such services as the greater part,. and by far the most important, responsible, and valuable of these rendered by Mr. Reeves, there can be no certain standard; and for which it. is difficult for any others than the attorney and the client to make an accurate and satisfactory estimate. In such cases the compensation is.

usually the subject of special agreement. In this case, as there was no such agreement, the reference to the members of the local bar was eminently proper. There is nothing in the record in conflict with, or that tends to diminish the value of their testimony on this subject; and they had some means of knowing the nature and extent of the services rendered by Mr. Reeves. Mr. Reeves says: "My time was more engaged, and I was more taxed in the management of that succession than any that I have ever had in thirty years practice. It is utterly impossible for me to state the full services that I have rendered that estate."

We are not at liberty, if we were inclined, to disregard the testimony in the cause, which is the only means of information which we have touching the matter in controversy. The amount allowed does not seem to be beyond a just and reasonable compensation for the services as detailed by the witnesses; and we think the parish judge erred in deducting from it three hundred dollars.

It is therefore ordered, adjudged, and decreed that the judgment of the parish court be so amended as to reject and dismiss the opposition of May E. Wood, James Jackson, and Kate A. Bailey, heirs of Dempsey P. Jackson, to the provisional account filed by Maria J. Jackson, administratrix; that the said account be homologated as rendered and filed; that the balance due S. V. Reeves for his services as attorney for the succession of Dempsey P. Jackson the sum of eight hundred and fifty dollars, as set down and charged in the said provisional account, be allowed as a privileged claim against the said succession, and be paid in due course of administration, with interest at five per cent per annum from the twelfth day of January, 1877, until paid; that the said opponents, heirs of Dempsey P. Jackson pay the costs of their opposition in the parish court, and all the costs of this appeal; and that the said judgment as thus amended be affirmed.

---

ON APPLICATION FOR REHEARING.

EGAN, J. We have been pressed with great earnestness to grant a rehearing of this cause. The opponents certainly can not complain that they have not been faithfully and zealously represented by their counsel before this court. The chief cause of complaint against the opinion and decree rendered we have no doubt has grown out of the fact that the judge who prepared it, out of regard for the zeal of counsel and following his example, entered into a dissection of the case sometimes important but not necessary to the determination of the issues presented in this record.

It is impossible to follow up or detail every distinct piece of service

rendered or counsel given in the course of an administration running through several years. The occasion for both in such a succession as that now under consideration is constantly recurring, and it would be both unjust and unreasonable to expect a rendition of account of services by the attorney like the items of a merchant's account. Enough has been shown by positive evidence, independent of the opinions of witnesses, as to value to satisfy us that the amount set down for counsel fees in this succession is very reasonable for one of the size and character. We do not share in the apprehensions of counsel of danger to the jurisprudence of the State from allowing reasonable fees to competent counsel of high character and professional standing, especially where the services have resulted so well as in this instance. We do not think any thing in the opinion already read could be construed into censure of the counsel who represented opponents before us. We very cheerfully say, however, that any strictures contained in it were elicited by a paper in the record for which he is in no wise responsible.

For the reasons given the rehearing is refused.