(49 South. 138.)

No. 17,271.

Succession of FILHIOL.

(March 15, 1909. Rehearings Denied April 26, 1909.)

1. APPEAL AND ERROR (§ 1097*)—LAW OF THE CASE.

The judgment of the district court heretofore rendered, and affirmed on appeal, having received an interpretation of which it is fairly susceptible and which operates no injustice, this court will not now undertake to enforce such judgment upon a theory of interpretation not heretofore propounded, and which is made impracticable by the action and acquiescence of the proponent.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4358–4368; Dec. Dig. § 1097.*]

2. EXECUTORS AND ADMINISTRATORS (§ 495*)—COMMISSION OF EXECUTOR.

Where the testator names the same person as his universal legatee and sole executor, the intention that such person shall have the estate over and above any amount which might otherwise be required for the payment of an executor's commission is unmistakable, and the fact that such intention is defeated, or partially defeated, with respect to the legacy, furnishes no basis for the argument that the commission should be withheld.

[Ed. Note.—For other cases, see Executors and Administrators, Dec. Dig. § 495.*]

3. WILLS (§§ 211, 405*)—PROBATE—FEES OF COUNSEL—COSTS.

It is, ordinarily, the duty of a person named as testamentary executor to offer the will for probate, to defend it from attack, and to endeavor to have it executed, and, as that duty results from the act of the testator, the expense, such as fees of counsel and costs of court, incurred in its discharge, should be borne by the testator's succession.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 518, 879–884; Dec. Dig. §§ 211, 405.*]

4. WILLS (§ 408*)—PROBATE—ALLOWANCE FOR ATTORNEY'S FEES.

The amount allowed as attorney's fees in one case, does not, as a rule, throw much light upon the question of what should be allowed in another. The matter must be determined in each case with reference to the presence or absence of a variety of factors.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 886; Dec. Dig. § 408.*]

(Syllabus by the Court.)

Appeal from Sixth Judicial District Court, Parish of Ouachita; James Pemberton Madison, Judge.

In the matter of the Succession of Roland M. Filhiol. Tableau of privileged debts and claims filed, and opposition thereto of Hardy H. Filhiol and others. From the judgment Inez Schmidt, executrix, and others, appeal. Amended and affirmed.

Andrew Augustus Gunby and Edgar Mayer Cahn, for appellant Schmidt. Stubbs, Russell & Theus, for appellant heirs of Hardy H. Filhiol. Andrew Augustus Gunby, in pro. per. Edwin Howard McCaleb, for appellant Cahn. Cherubusco Newton, in pro. per.

Statement of the Case.

MONROE, J. Upon the death of the decedent, his brother, Hardy H. Filhiol, presented a petition to the district court alleging that the Ouachita National Bank had in

its possession a package of papers, which he believed contained a will, and praying for an order for its production, and a will was produced whereby the testator bequeathed to his two nieces, Louise and Estelle Filhiol (daughters of Hardy H. Filhiol), his "Rust Plantation"; to Hardy H. Filhiol, his "Sanford Place," and $5,000 in cash; to Margaret Lamkin, his "Burch Plantation"; to Laura Culpepper, $5,000 in cash; and to Inez Schmidt, the residue of his estate, also naming her sole executrix. On the application of the so-named executrix, a day was fixed for the probating of the will, and inventories were ordered, which, when taken, showed an estate, in the parish of Ouachita, valued at $327,817.67, and, in the parish of Orleans, valued at $13,197.14, or a total of $341,014.84. Hardy H. Filhiol opposed the probate and execution of the will and the confirmation of the executrix named therein, alleging that he was the sole presumptive heir of the decedent; that the latter and Inez Schmidt having lived together in open concubinage, she was incapable of inheriting or of qualifying as executrix; and praying that he be put in possession, as sole heir, and appointed dative testamentary executor, in order to execute the provisions of the will not opposed by him.

There was judgment in the district court ordering the will to be probated and executed, except as to the donation in favor of Inez Schmidt, which was reduced to 10 per cent. of the whole amount of the estate, "which donation, thus reduced" (to quote the language of the decree), "is ordered to be paid out of the movables of said estate." It was further ordered that the appointment of Inez Schmidt, as executrix, be confirmed, and that she be placed in possession of the estate, in that capacity, upon taking the oath required by law—which she did, and received her letter testamentary accordingly.

The judgment so rendered by the district court was affirmed by this court, on appeal, the Chief Justice concurring in the decree, and Justices Provosty and Monroe dissenting. Succession of Filhiol, 119 La. 998, 44 South. 843. Thereafter, on May 23, 1908, Hardy H. Filhiol ruled the executrix to show cause why she should not file her final account, and (having, on September 18, 1907, filed a provisional account, showing her gestion up to that time) she, on May 25, 1908, filed a tableau of privileged debts and claims, which was opposed by Hardy Filhiol, and it is the judgment upon the opposition so filed that we are now called on to review. After a declaration of general opposition, the opponent especially objects to the following items, to wit:

| | |
|---|---:|
| Judgment in favor of Inez Schmidt for 10% on the entire succession, as fixed and decreed by Judge E. E. Hall, on opposition to probate of will, which judgment was affirmed, on appeal, by the Supreme Court, which 10% are estimated on the inventories, which are less than the real value of said succession property | $34,101 58 |
| Commission of executrix, Inez Schmidt, amount fixed by law, 2½% on amount of inventories ($34,101.58) | 8,525 39 |
| Attorney's fees of A. A. Gunby, as per his claim filed | 17,000 00 |
| Amount claimed by Edgar M. Cahn, as Atty.'s fee, as per his claim, filed herewith | 25,000 00 |

The grounds of the opposition are stated, substantially, as follows: That the item of $34,101.58 should be satisfied in movable property and not paid in cash; that the alleged commission of $8,525.39, is not due "for the reason that she" (the executrix) "is entitled to no commission whatever"; that the item of $17,000, placed on the account as due to A. A. Gunby, as attorney fees, is grossly excessive, and that $2,500 would be ample compensation for all services rendered by said Gunby for which the succession is liable; that the item of $25,000, charged

as a fee by Edgar M. Cahn, is not due by the succession, whatever services were rendered by said Cahn having been rendered to Inez Schmidt personally, but that, should the court conclude that said Cahn rendered any services to the succession, he would be amply compensated by a fee of $1,000.

The transcript discloses the following facts, pertinent to the issues to be decided, to wit:

Roland M. Filhiol died on May 18, 1906, and his succession was opened by his brother, Hardy H. Filhiol, in the manner heretofore stated, on the following day. As soon as the will had been produced and its contents made known, Inez Schmidt, who was named as universal legatee and executrix, employed Judge A. A. Gunby, a prominent member of the Ouachita bar, to aid her in the discharge of her duties and to protect her interest. On May 23, Judge Gunby presented the will to the court, and obtained the necessary orders for its probate (contradictorily with the heir and legatees) and for the taking of inventories, after which he entered into an agreement with counsel representing the heir at law (present opponent) to the effect that the control and management of the plantations of the succession should be continued in the persons who had been employed by the decedent, until the appointment of an executor or other person legally qualified to act. Inez Schmidt returned to her home, in New Orleans, about May 25th, and telegraphed to Judge Gunby that, with his consent, she wished to employ additional counsel, and, the consent being given, she employed Mr. Edgar M. Cahn, who thereafter coöperated with Judge Gunby in the manner and to the extent as hereafter stated.

The decedent, at the time of his death, owned 13 extensive cotton plantations, all of which he was furnishing with supplies; likewise, stores from which he sold goods, not only to his tenants, but to the public at large, and cotton gins, real and personal property in the cities of New Orleans and Monroe, stocks in corporations, variously situated, and notes and obligations, the debtors of which lived here and there. The crops on the different plantations were in course of being made, but the cotton from the crops of 1905 had not all been sold, and the accounts of that year, with laborers, tenants, and outside parties, had not all been settled. The opposition of Hardy H. Filhiol was filed on June 4, 1906, and thereafter the case was tried and judgment rendered, annulling the universal legacy to Inez Schmidt, but confirming her as executrix, and thereupon, on September 19th, she received her letters testamentary and assumed the administration of the succession. Beyond that, matters remained in the same condition of uncertainty as before, until November 18, 1907, when the judgment of this court, affirming the judgment appealed from, became final; the difference between the situation as it existed prior to the confirmation of the executrix and afterwards being that, after her confirmation, the executrix had imposed upon her the entire responsibility for the administration of the estate. Under the circumstances, as thus stated, it was of the highest importance to the interest of all concerned that the counsel representing the executrix (who, for aught that appears, had had no experience in matters of business) should not only be competent to deal with the situation in its legal aspect and to avoid involving the succession in complications leading to useless, tedious, and expensive litigation, but that he should possess a knowledge of affairs, of cotton planting and merchandising—and of human nature, as represented in the negro laborer and tenant, whose presence, where 13 cotton plantations, with crops ready for gathering, are concerned, is most essential, but whose distrust of new conditions and new

control is easily excited. When the executrix was appointed, the crops of 1906 were being gathered, and not only was her counsel confronted with the current business pertaining to those crops, but, as matters had been more or less tied up since the death of the owner of the estate, there were outstanding matters which had been awaiting settlement from that time, to which were to be added the transactions of the manager upon whom the parties had agreed, and whose accounts aggregated some $12,000, so that, from September 19th until some time in January, the counsel was engaged daily, save on Sundays and Christmas, in going over accounts and making settlements with hands, tenants, and people of all sorts presenting claims in infinite variety. There were demands brought against the succession by employés of the decedent for back pay which required careful investigation, for the books had been loosely kept; there were sales to be made of live stock, which was useless and expensive to keep, and of property, which was of no service and was deteriorating in value; there was correspondence to be carried on with the factor in New Orleans, to whom were consigned nearly 1,000 bales of cotton; there was rent to be collected from the tenant farmers and from the lessees of the property in Monroe. It was necessary to determine whether the succession should continue to make advances to the farmers, and, that question having been decided in the negative, to find satisfactory lessees for the farms, the cotton gins, and the stores, and to make satisfactory contracts with them, save as to those plantations which were the subjects of the special legacies, and which were delivered to the legatees. It was necessary to keep the places, the gins, and the ginhouse, etc., in repair, and to buy lumber and material and employ mechanics for that purpose. J. C. Miller owed the succession $10,000, and the executrix, through her counsel, after being authorized by the court, settled with him by taking his farm at $8,400 and the balance in cash. The succession held a piece of property under a deed from Wm. Ellis which gave him the right to redeem, and the matter was settled by obtaining his relinquishment; and there was another matter, of similar character, which, after negotiation, was left in abeyance at the suggestion of counsel representing the heir. The succession was sued for $17,000, alleged to be due as an inheritance tax, and the suit was defended by counsel for the executrix as well as counsel for the heir and legatees with the result that the state obtained a judgment for $1,250, from which no appeal was taken. There were mortgages which fell due, and proceedings to foreclosure were prepared, but they were stayed at the suggestion of counsel for the heir, who, after the judgment of this court had become final, concluded that he owned more land than he could well manage, and preferred that the mortgagors should be given time for the payment of their debts. One year from the date of her appointment, the executrix filed a provisional account showing her gestion up to that time, and showing a total of assets (arriving at by adding to the values, as set forth in the inventories, the amounts subsequently collected and received) of $402,578.91, and the account was homologated, without opposition. In fact, there is, and has been, no complaint and no cause of complaint of the administration of the executrix, the objections with which we have to deal relating exclusively to the compensation of those by whom the administration has been conducted, and to the manner in which the executrix proposes to execute the judgment, heretofore rendered in her favor, for 10 per cent. of the whole amount of the estate "to be paid out of the movables."

The employment by the executrix of additional counsel after she had employed Judge

Gunby, and the relation of the counsel so employed to the litigation which ensued, as we understand the record, is explained as follows: Roland Filhiol lived in the Parish of Ouachita, where his plantations were situated, and his succession opened, as did, also, Judge Gunby. Inez Schmidt lived in New Orleans, as did Mr. Cahn, whom she employed as additional counsel. When she learned of the dispositions of Filhiol's will, and also learned that Filhiol's brother intended to contest the disposition in her favor, on the ground that she was incapable of receiving, she realized that the defense of that disposition would involve an investigation which must needs be conducted in both jurisdictions, and, hence, as we take it, she employed Mr. Cahn, in order that she might have counsel at both ends of the line. As a matter of fact, Mr. Cahn attended to the taking of the testimony of most of the witnesses who were examined in New Orleans, participated with Judge Gunby in the trial of the original opposition at Monroe, and was present at the argument before this court on the appeal. He had, however, little or nothing to do with the administration, and is entitled to compensation from the succession only for his services in defending the will.

Messrs. E. T. Lamkin and F. G. Hudson, prominent members of the Monroe bar, testified upon the subject of the attorney's fees, in substance, as follows: Mr. Lamkin:

"I think $7,500 is very reasonable for defending the will, and I think $12,000 is a very reasonable fee for the other services rendered."

Mr. Hudson:

"I think that a fair compensation for the services of counsel, in the matters above enumerated in this succession, would be 5% of the total assets of the succession, as shown by the final and provisional accounts, with a minimum charge of $15,000."

It is proper to say, in concluding this statement of the facts, that the counsel for the executrix had an agreement with her whereby they were each to receive 10 per cent. of the amount recovered by her. There was judgment in the district court sustaining the opposition to the following extent, viz.: By decreeing "that the legacy, amounting in value to $34,101.58, due Inez Schmidt, in movables, * * * be paid out of the movable property in hand, including cash, in the proportion that the appraised value of each item of movable property bears to the entire legacy, except that the portion due by the notes and accounts is ordered paid in cash, it being the intention to order said legacy paid out of the cash and stocks on hand, as shown by the account filed by the testamentary executrix"; by disallowing the item $8,525.39, charged as commission due the executrix; by reducing the item of $17,000, charged as fee due to A. A. Gunby, to $7,-500; by reducing the item of $25,000, charged as fee due to Edgar M. Cahn, to $1,500; and there are one or two trifling amendments ordered with reference to items not referred to in the opposition. The appellants before the court are Inez Schmidt, individually and as executrix, A. A. Gunby, Edgar M. Cahn, and Hardy H. Filhiol.

### Opinion.

1. The law provides that persons occupying towards each other the relations which the testator and the universal legatees in this case have been held to have occupied are—

"incapable of making to each other, whether inter vivos or mortis causa, any donation of immovables; and, if they make a donation of movables, it cannot exceed one-tenth part of the whole value of their estate." Civ. Code, art. 1481.

The disputed disposition in the will reads:

"I give and bequeath to Inez Schmidt, who, at this time, is residing in the city of New Orleans, all the balance of my possessions, consisting of real estate and personal property in the city of New Orleans, city of Monroe, and Ouachita parish, Louisiana, including all stocks, bonds, cash and all indebtedness that's due me."

Upon the trial of the opposition originally filed, in which the effect of this provision was put at issue, it was adjudged and decreed that the will—

"be executed, according to its terms and provisions, except as to the donation in favor of Inez Schmidt, in said will, which is hereby reduced to 10% of the whole amount of the estate of R. M. Filhiol, which donation, as thus reduced, is ordered to be paid out of the movables of said estate."

According to the original inventories, the estate consisted of real estate, valued (in round figures) at $193,000, and movables, valued (also in round figures) at $134,000. The movables consisted of stocks, bonds, notes, debts, cattle, horses, mules, and vehicles, silverware, cut glass, bric-a-brac, watches, rings, furniture, pictures, the contents of a drug store, and an infinite variety of other articles. A good deal of it had been sold long before the filing of the account now under consideration, and a good deal, including, as we understand it, all the furniture and belongings contained in the residence of the decedent, had been turned over to the opponent, and the proposition now is that the appellee, Inez Schmidt, shall take, in kind, certain of the movables which remain, pro rata, to an amount sufficient in value to satisfy her judgment for $34,101.58. Pretermitting the question of the proper construction of article 1481, Civ. Code, that is to say, whether it means that the donation there referred to shall be satisfied in or with movables, or from the proceeds of movables, we are of opinion that matters have proceeded too far in this case for us to do otherwise than enforce the judgment heretofore rendered according to what appears to us to have been the interpretation (fairly authorized) which the parties placed on it at the time it was rendered, and afterwards, until the filing of the opposition now under consideration, and which, so far as we can see, operates no injustice. It was entirely inconsistent with the idea, now suggested, that Inez Schmidt was to be considered a legatee, under universal title, of a proportion of the movable property equal in value to the one-tenth of the entire estate, and that she was to receive the legacy in kind, for the opponent to have demanded and received delivery of the several thousand dollars worth of movables contained in the residence of the decedent, and for him to have stood by, without making objection, when other movable property was sold under orders of court, in the interest of all concerned; and it appears to us that it would now be wholly impracticable to deal with the matter upon the theory that Inez Schmidt became, under the terms of the will, an owner, in indivision with the opponent (as heir at law), of all the movable property of the estate, though it may be that the law under which she takes is susceptible of that interpretation. We, therefore, conclude that she should be paid the $34,101.58 due her, in cash, to be derived (if not now on hand) from the sale of movable property.

2. Civ. Code, art. 1686, provides that:

"Testamentary executors, to whom the testator has bequeathed any legacies or other gifts by his will, shall not be entitled to any commission, unless the testator has formally expressed the intention that they should have the legacies over and above the commission."

A legacy, it has been held by this court, is evidence of the intention of the testator to remunerate the person named as executor for his services in that capacity otherwise than by the commission. Mon et al. v. Garnier, 6 La. 326. And, where the purpose of the testator is accomplished—that is to say, where the legatee receives the legacy intended for him—it would make no difference whether it exceeded, or was less than, the amount which he would otherwise have received as commission. But where the intention of the testator to remunerate the executor for his trouble, by means of a legacy, is frustrated by the annulling of the

legacy, there would appear to be no longer any reason for withholding the commission. In the instant case, however, another view suggests itself. The person here named as sole executrix was also named as universal legatee, from which it is evident that it was the intention of the testator that she should receive (after the payment of the particular legacies) the entire residue of the estate, including any amount which might otherwise have been required for the payment of an executor's commission.

In other words, by naming her his universal legatee and sole executrix, the testator expressed the intention that she should have the estate and the commission, or over and above the commission, and, if the legacy had been maintained, she would have had both. That being the case, the fact that the intention of the testator as to the estate has been in part defeated furnishes no basis for the argument that his intention with respect to the commission should meet with a like fate. In fact, if the legacy had been special and the testator had expressed the intention that the executrix should have it over and above her commission, no one would contend that the defeat of the legacy would carry with it the deprivation of the commission. And why? Because of the expressed intention of the testator that she should have both legacy and commission. But, in the case as presented, that intention is just as clearly expressed, and, if the will had been executed as written, the result would have been the same. The executrix would have had both legacy and commission. Why, then, in this case, any more than in the other, should she lose the commission because she is deprived of the estate or of the greater part of it? We can discover no sufficient reason, and are of opinion that the commission should be allowed.

3. It was unquestionably the duty of Inez Schmidt to offer the will for probate and to endeavor to have it executed. It contained several legacies in which others than she were interested, and the bequest to her involved not only her own interest, but the interest of two illegitimate children who were left by the testator, and for whom he, no doubt, supposed he was providing in disposing of his estate as he did. And, as the duty referred to was imposed upon her by the act of the testator, it is equally clear, both upon reason and authority, that the expense incurred in its discharge should be borne by his estate. Sterlin's Executor v. Gros, 5 La. 107; Succession of Heffner, 49 La. Ann. 415, 21 South. 905; Fenner, Henderson & Fenner v. Succession of McCan, 49 La. Ann. 600, 21 South. 768; Succession of Morere, 117 La. 549, 42 South. 132.

Counsel for opponent refer to several decisions of this court as supporting the proposition (contained in the syllabus of their brief) that "counsel fees for defending the legacy, in favor of Inez Schmidt, and costs of appeal, should be borne by Inez Schmidt individually," to wit: Succession of Hickman, 13 La. Ann. 364, in which an administrator, having been enjoined from selling property to pay a balance shown to be due him on a pretended account, and the pretended account having been annulled at his cost, afterwards undertook to charge the succession with the fee of his attorney in defending the suit. The court held that the succession was no more liable for the fee than for the costs. Girard v. Babineau, 18 La. Ann. 604, in which the executor, through his attorney, propounded the will, and the probate thereof was opposed by the heirs at law, who, however, subsequently brought a direct action against the legatees, including the executor, to annul the will. The court held (quoting the syllabus):

"An estate is liable for all costs incurred by an executor in endeavoring to sustain the validity of a will which is afterwards declared void. But where heirs institute a direct action

against the legatees to have the will annulled, and are successful, the estate is not chargeable with the costs and charges incurred by the legatees in their attempt to sustain the will."

Succession of Hasley, 27 La. Ann. 587, in which it was held that a fee, charged on behalf of the executrix, for defending a suit to reduce a legacy to the disposable portion, was not a proper charge against the succession.

"The testator," the court said, "having left forced heirs, the executrix might have learned from any member of the bar that the bequest of the usufruct of the whole of his property was reducible, and there was no necessity for defending 'such a suit, at least by the executrix."

Succession of Heffner, 49 La. Ann. 415, 21 South. 905, in which it was held (quoting the syllabus):

"Where one who had qualified as executor is brought into court, in his official capacity, to defend an attack upon the validity of the will which he is executing, he has a right to employ counsel to defend such suit, and the services of such counsel are properly chargeable to the estate."

The cases in 13, 18 and 49 La. Ann. (21 South.), do not at all support the opponent's contention, and that in 27 La. Ann. has only the appearance of doing so, the difference between that case and this being that, in the case cited, the executrix, "might have learned from any member of the bar" that it could not be defended, whereas the particular question, concerning the validity of the legacy presented for decision in the instant case, had but once before been considered, and then in a case in which a bequest, attacked on similar grounds, had been sustained (Succession of Jahraus, 114 La. 456, 38 South. 417), as two of the members of this court thought the bequest in this case should have been, the difference of opinion being founded, in part, upon differences in appreciation of the facts. Moreover, in the instant case, the opponent attacked his brother's appointment of his executrix, and the appointee was in duty bound to resist the attack, and did so successfully.

The remaining question, then, is as to the extent to which the succession should be held liable for the fees of the counsel employed by the executrix, and this divides itself into two questions, viz.: (1) How much should be allowed for defending the will? and (2) how much should be allowed for services connected with the administration of the succession?

It will be remembered that, of 13 plantations, but 3 were disposed of by special legacies, and, of the movable property, but $10,000 was thus disposed of.

Of the three plantations referred to, Rust was appraised at $17,205, Sanford at $12,330, and Burch at $7,500, making a total of $37,035, to which add $10,000, cash, making $47,035, and, deducting the latter amount from the total appraisement ($341,014.84) gives us $293,979.84 as the amount involved in the determination of the issue raised by the attack on the will (and that amount we think is considerably less than the real value of the property). The proper presentation of the case, as to both sides, required the taking of considerable testimony in the parish of Orleans as well as in the parish of Ouachita, and the opponent and the executrix alike found it necessary to employ additional counsel in both parishes. The question involved was important, the amount large, and the responsibility heavy, for, if by ignorance, accident, or neglect a lawyer fails to present to the court either the facts or the law of his case as they should be presented, and the judgment goes against his client, he does both his client and himself an injury which it is not always possible for him to repair. Upon the whole, considering, in addition to the factors stated, our own knowledge of the character of the services rendered, adding thereto the opinions of the members of the bar who have testified as to the value of those services, and not overlooking the fact that, in defending the will on behalf of the

executrix, the counsel have been, at the same time representing the interest of the individual who holds that position, and are to be paid for so doing, we are of opinion that there should be allowed them for defending the will, from the funds of the succession, a fee of $5,000, to be divided equally between them. Upon the second branch of the question, it appears to us that the fee for services in the administration of the estate should inure exclusively to Judge Gunby, since it was by him that those services were rendered. In dealing with a similar question, though the interests were not so large or varied, and the attention required not so great, our predecessors in this court once said:

"It is impossible to follow up or detail every distinct piece of service rendered, or counsel given in the course of an administration running through several years. The occasion in such a succession as that now under consideration is constantly recurring, and it would be both unjust and unreasonable to expect a rendition of account of services by the attorney like the items of a merchant's account." Succession of Jackson, 30 La. Ann. 467.

And so we say here. At the risk of some repetition, we excerpt the following statement from the counsel's brief, as conveying some idea, though an inadequate one, of the labor and responsibility which devolved upon him, and which he so performed and sustained that no cause of complaint has been found, and the value of the estate was increased, while in his hands, by more than $60,000, to wit:

"Your honors will consider that. when this succession was opened, on May 18, 1906, Mr. Filhiol's 13 plantations had all been planted, and the crops were under full headway of cultivation. You will understand what responsibility, what risk, what labor, was involved in carrying on the cultivation of those crops, furnishing supplies, harvesting and marketing 1,000 bales of cotton. There was not a dollar of cash on hand. The negro labor was badly frightened and ready to disperse. Some $25,000 of debts had to be scrutinized and paid. Ginhouses had to be repaired and operated. Settlements of previous years, as well as for the current year, had to be made. Rents and mortgage notes, and a large amount of unsecured indebtedness, had

123 LA.—17

to be collected or secured. Provisional and final accounts had to be prepared—tableaux of ordinary and privileged debts—besides probating the will and taking inventories. All this had to be done in the face of a bitter contest over the will of the deceased and ownership of the estate."

We are referred to many cases involving the fees of attorneys, but they each have their own peculiar features, and throw but little light upon the question to be here decided, which is not what should have been allowed in those cases, but what should be allowed in this case. Our conclusion is that $12,000 will be little enough.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended in so far as to direct that the sum of $34,101.58 due to Inez Schmidt be paid to her in cash from the proceeds of the sale of movable property or otherwise; that the item of $8,525.39 charged by the executrix as her commission be reinstated on the account, allowed, and paid; that the item of $7,500 allowed in said judgment to A. A. Gunby be increased to $14,500; and that the item of $1,500, allowed in said judgment to E. M. Cahn, be increased to $2,500. It is further decreed that, as thus amended, said judgment be affirmed; the costs of the appeal to be paid by the succession.