(70 South. 505)

No. 21648.

Succession of PERCIVAL.

(Dec. 13, 1915. Rehearing Denied Jan. 10, 1916.)

*(Syllabus by the Court.)*

1. ATTORNEY AND CLIENT ⊙⟼141—ATTORNEY'S FEES—DETERMINATION OF AMOUNT.

In fixing the fees of attorneys employed by executors, administrators, and other representatives of successions, the exertion of legal knowledge, the responsibility incurred, the labor bestowed, and the amount involved constitute the principal factors to be considered.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 347; Dec. Dig. ⊙⟼141.]

2. COURTS ⊙⟼90—DECISIONS—STARE DECISIS — ATTORNEY'S FEES — EXECUTORS AND ADMINISTRATORS.

Where there is no fixed standard for the measurement of such fees, the decisions of the Supreme Court in similar cases should be followed for the sake of uniformity.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 313–321, 351; Dec. Dig. ⊙⟼90.]

3. WILLS ⊙⟼728—LEGACY—RENTALS.

The legacy of a leased building, with directions that the rentals therefrom shall be used by the legatee for the benefit of certain persons, carries with it such rentals accruing from and after the date of the death of the testatrix.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1759–1780; Dec. Dig. ⊙⟼728.]

4. JUDGMENT ⊙⟼704—CONCLUSIVENESS—PARTIES.

Where the heirs at law brought suit against the executor and all the legatees to annul the legacy of a leased building, and there was judgment dismissing the suit, and ordering that the legatee be put in possession of the building and rentals accruing from the date of the death of the deceased, *held*, that such judgment concluded the other defendants.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1229; Dec. Dig. ⊙⟼704.]

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

In the matter of the succession of Mary Percival. An opposition filed by the Free Church of the Annunciation to the account of Peter J. Flanagan, dative executor, was overruled in part, and the church appeals. Modified and affirmed.

H. Generes Dufour, J. Blanc Monroe, and Frederick Adolph, all of New Orleans, for appellant. Carleton Hunt and M. D. Dimitry, both of New Orleans, for appellee.

LAND, J. This case is a sequel to Succession of Percival, 137 La. 203, 68 South. 409, in which this court held that the legacy of a valuable building to the Free Church of the Annunciation was not void as a prohibited substitution, as alleged by the heirs of the deceased. That case was decided on April 12, 1915, and became final on May 10, 1915, when a rehearing was denied.

On June 8, 1915, Peter J. Flanagan, dative

testamentary executor, filed his account, and prayed that the same, after due publication, be approved and homologated, and the funds ordered paid out in accordance therewith.

The said account shows "assets" on hand as per inventory, less certain bonds delivered to Rev. Benjamin D. Chambers, legatee, and a certain lot delivered to Campbell Palfrey, legatee, pursuant to orders of the court, and all the movables, except bonds, sold for $1,-335.76, under order of the court. Among the "assets" also appear rents collected on three pieces of real estate, aggregating $5,800.36, of which the sum of $5,333.36 was collected from the lessee of the building bequeathed to the Free Church of the Annunciation.

The said account shows "liabilities" totaling a large sum, among which appear two items for fees due the attorneys for the dative executor, one for $13,735.60, for professional services rendered in the administration of the estate, and the other for $7,000, for professional services in defending the validity of the will against the attack of the heirs at law in the proceeding supra.

The appraised value of the succession as per inventory amounted to $264,056.33, consisting of cash, bonds, coupons, movables, claims, and real estate; the last appraised at $172,000.

The building at the corner of St. Charles and Gravier streets was devised to the Free Church of the Annunciation, subject to certain charges; and two other buildings in the city of New Orleans were devised to other persons.

The testatrix bequeathed all her bonds to the Rev. Benjamin Duvall Chambers, of New York City, but in a subsequent disposition she left one of the bonds to Frank McDonald, of England, to be sent to him by the Rev. Chambers. The bonds amounted to $84,204, with past-due coupons aggregating $917.50. By order of the court bonds to the value of $61,040 were delivered to the said

138 LA.—18

Chambers, the executor retaining one bond for $1,000 for account of the said McDonald, and the remainder of the bonds, valued at $22,204, for account for the aforesaid Chambers.

On June 18, 1915, the Free Church of the Annunciation filed an opposition to the account of the dative executor. The church opposed the items of taxes, attorney fees, and medical bills, and claimed a credit for the rents collected from the tenant of the building devised to said legatee since the death of the testatrix.

The opponent further opposed said account as not showing how and out of what fund the debts and expenses of the administration were to be paid, and against whom the surplus, if any, was chargeable, and how said surplus or deficit should be distributed.

The church prayed that its opposition be sustained, the account amended, and that the executor be ordered to file a full and complete final account and tableau of distribution in the form and manner required by law.

On July 6, 1915, the said church sued out a rule against the dative executor to show cause why mover should not be sent into possession, as owner, of the building aforesaid, occupied by the Western Union Telegraph Company, as lessee, upon mover's furnishing a solvent bond in an amount directed by the court for the payment of that proportion of the debts, charges, and costs of administration as are in law legally chargeable to the mover, as legatee.

The case was tried, and was submitted on July 29, 1915. Judgment was rendered and signed on August 3, 1915, sustaining the opposition of the church as to taxes, but overruling it as to attorney fees, and discharging the rule for possession, reserving the right of the church to oppose the final account and tableau of distribution, which was ordered to be filed within five days.

On August 10, 1915, the dative executor filed his final account and tableau of distribution, in which the Free Church of the Annunciation was charged with $16,651.50 as its pro rata of debts and charges amounting to $28,750.31.

The Free Church of the Annunciation has appealed. In the suit of the heirs of the deceased to annul the legacy to the church as a prohibited substitution the judgment of the civil district court rejected the demands of said heirs, and recognized said church as the legatee under the last will and testament of the deceased, and ordered that said legatee be put in possession of the building at the corner of St. Charles and Gravier streets, in the city of New Orleans, and then occupied by the Western Union Telegraph Company, "together with the revenues that may accrue therefrom from the date of said Mary Percival's death." The same judgment annulled the bequests to Theresa Anderson and John Westley Chambers, which under the terms of the will were payable by preference out of said revenues. The dative executor appealed from the judgment in so far as it set aside the said two bequests. The heirs appealed from the judgment as a whole. On appeal the judgment was reversed in so far as it annulled the aforesaid bequests, and was affirmed in all other respects. 137 La. 209, 68 South. 412.

This court declared that it expressed no opinion as to the rights of Theresa Anderson and John Westley Chambers or the obligations of the Church of the Annunciation to them. Id.

[3, 4] The judgment sending said church into possession of the "Western Union" building, with accrued rents from the date of the death of the testatrix, is final and conclusive against the succession. The will directs that the rentals from said building be used by the church for the use and benefit of Theresa Anderson, and that the church must pay, from the accumulation of the income, $12,000 to John Westley Chambers. These provisions make it clear that the legacy to the church included the rentals of the property. C. C. art. 1631, provides that the "interest or proceeds of the thing bequeathed shall accrue to the benefit of the legatee," when the testator has expressly declared in his will to that effect, without his having brought suit for the same. In this case the disposition of the rentals and income by the testatrix was equivalent to such a declaration.

The will concludes as follows:

"I bequeath all these gifts to the various parties, with seisin and without bond."

It was the intention of the testatrix that the real estate, bonds, etc., devised and bequeathed should be delivered without delay to the respective legatees. But the good lady appointed no executor to take possession of her estate and to execute the provisions of her testament.

The bequest to the Free Church of the Annunciation was of a certain object, and therefore was a particular legacy. C. C. 1635; Succession of Geddes, 36 La. Ann. 53. But, like all other particular legacies, it must be subordinated to the payment of debts and expenses of administration. C. C. 1430, 1431, 1502, 1511, 1627, 1634, 1642.

It is clear that the legacy to the church was not "under a universal title," as the testatrix owned other immovables, which she disposed of in her will. C. C. art. 1612. It follows that C. C. arts. 1012 and 1671, and C. P. arts. 1000 and 1001, relative to heirs taking the seisin from the testamentary executor, have no application to this case, and that the rule of the church to be put in possession on giving bond and security was properly dismissed.

[1, 2] The opposition of the church to the debts and charges appearing on the account of the dative executor is limited, in the brief

of counsel, to the fees, aggregating $20,735.60, allowed the attorneys for the dative executor. Counsel for the church say in their brief:

"This fee is opposed by the church as excessive. The inventory in this case amounts to $264,000. The administration of the estate was simple. There was little labor involved, and scarcely nothing whatever but routine matters of administration, as the record will disclose. There was only one serious piece of work, and that was the defense of the will against the attack of the heirs, wherein they sought to annul the legacy in favor of the church. In this case the church was represented by counsel of its own selection. The efforts of special counsel were made under the eye of this court, and obviously it ill becomes us to comment upon the extent or value of the service. We do say, however, that the fee charged by the attorneys for the public administrator is out of all reason, and sets a dangerous precedent in the valuation of professional services."

Counsel for the church state that their fee, in the suit of the heirs, was fixed by contract at $10,000, but was contingent upon the success of counsel, who had borne the bulk of the costs.

The same counsel state that the fee of $20,735 included $3,000 to be paid to Mr. Livaudais as additional counsel for the dative executor, and further say: ·

"The will provided that Mr. Livaudais should deliver to Dr. Chambers the bonds left by the testatrix to Dr. Chambers, and that Dr. Chambers should pay Mr. Livaudais a commission for so doing."

Counsel further say:

"Several distinguished members of the bar testified in support of the fee as charged on the account. Your honors will recognize that, with the fraternal disposition that is well known to exist at the bar, these gentlemen were not able to say more than they did not consider the fee extraordinary."

Counsel further say that:

"The fee in this case is out of line with the standard fixed by this court in Succession of Filhiol, 123 La. 497 [49 South. 138]."

Counsel for the dative executor refer us to the opinion of the judge a quo on the subject-matter of the attorney fees allowed in the account, which reads, in part, as follows:

"The inventory shows the amount of the succession to be $264,056.53. The fee of the attorneys for the executor is based on the amount involved at about 5 per cent. on the amount of the inventory—that is to say, $13,755—for the labor performed. The fee of $7,000 extra is for the service of Mr. Hunt as special counsel and the attorney for the dative testamentary executor, Mr. Dimitry, in maintaining the will and the legacy to the Free Church of the Annunciation of real estate valued at about $150,000."

"This legacy was bitterly attacked by the collateral heirs of the deceased. It contained fidei commissæ and prohibitory substitutions."

"In selecting as special counsel, Mr. Hunt, the executor, was but trying to carry out the evident wishes for the deceased. She had written on the back of the envelope containing her will that she desired Mr. Hunt to settle her succession. If it had not been for a legal technicality, in all probability Mr. Hunt would have been her executor. The dative testamentary is rather to be commended than blamed or criticized for employing Mr. Hunt."

"The case of the collateral heirs against the succession was argued by Mr. Hunt with great ability before this court and the Supreme Court, and the result of his labor and those of Mr. Dimitry was the maintenance of the will, as far as the legacy to the Free Church of the Annunciation was concerned."

"The Free Church of the Annunciation did not appeal from the judgment maintaining the legacy rendered by this court. The legal questions involved were of the greatest importance and difficulty. Briefs were also filed in the Supreme Court in addition to oral arguments by Mr. Hunt and Mr. Dimitry. The evidence shows that the charges for administering the succession, and the charge for extra service of Mr. Hunt and Mr. Dimitry are fair and reasonable, not too high nor too low. The court has been assisted in arriving at this conclusion by the testimony of Messrs. Bernard McCloskey, William O. Hart, Charles J. Theard, and Charles Loque, all members of high standing at the bar, who have handled most of the largest successions in the city in past years."

In answer to a question, Mr. McCloskey said:

"Well, the question of lawyer's fees is a very difficult one. I don't know of any hard and fast rules; each case more or less depends upon particular conditions."

Mr. McCloskey considered the charge as "a good fee; nothing out of the ordinary." Mr. Hart considered that the fee was large, but not too high—a proper fee. Mr. Theard did not consider the charge excessive, but said:

"For the services rendered by Mr. Hunt and yourself [Dimitry], I should say a fee between $15,000 and $20,000 for all that was done would be reasonable in this case."

Mr. Theard further said that he had never made a larger fee than $15,000 in all his practice; that he had no rule for fixing fees, and did not guide himself by any percentage. Mr. Loque considered the fee as liberal, not out of the way, "not outrageous."

There was a contest over the administration of the succession between the public administrator, Alfred F. Livaudais, and Warren B. Reed, one of the heirs at law. The latter dismissed his application; and the court subsequently appointed the public administrator as dative testamentary executor of the estate. Thereupon the public administrator, B. D. Chambers, J. W. Chambers, Alfred Livaudais, W. D. Dimitry, and Carleton Hunt entered into a written agreement, acquiescing in the judgment of appointment on certain terms and conditions; one of which was that Messrs. Dimitry and Hunt, as counsel for the dative executor, for their services in settling the succession, should receive 5 per cent. of the inventory value, and for defending the Reed suit to annul the will such further fee from the estate as might be fair and equitable. The stipulation as to Mr. Livaudais did not increase the amount of fees to be charged for services of counsel. The Free Church of the Annunciation was no party to this agreement, and the question before the court is whether the charges are reasonable under the facts and circumstances of the case.

The charge of $7,000 for defending the suit to annul the will is, we think, just and reasonable.

The additional charge of 5 per cent. on the inventoried value of all the property belonging to the estate for services in the mortuary proceedings, we think, is excessive. The succession owed few or no debts, except expenses of last illness and funeral expenses.

The administration of the dative executor has involved the filing of a provisional account and another account or statement of assets and debts. Since the judgment below the dative executor has filed a final account and tableau proposing a distribution of the debts among the legatees. Any contest between them as to order and amount of their respective contributions will not concern the dative executor, representing, as he does, the succession as a whole. When such contributions are fixed by judgment of court, they doubtless will be paid. If not, the property left to any defaulting legatee may be sold by order of court to pay his pro rata of the debts.

Apart from the contest over the will, the administration of the succession involves only ordinary questions of law. All the legatees are represented by special counsel, who must look to their clients for compensation, under the terms and conditions of their respective retainers.

In an early case it was held that the measure of the reward of professional services is the exertion of legal knowledge, the responsibility incurred, and the labor bestowed. Dorsey v. Creditors, 5 Mart. (N. S.) 399. In another case the court held that the difficulties of the case, the amount in controversy, and other attending circumstances must be considered, in connection with the physical and mental labor, and responsibility incurred. Hunt v. Orleans Cotton Press Co., 2 Rob. 404. In a later case the court said that, where estates are concerned, the courts cannot be too rigid in adhering to the rule that the fee must be graduated by the value of the services. Porche v. Banks, 8 La. Ann. 65.

In Succession of Harris, 29 La. Ann. 743, James S. Ray, public administrator of Ouachita parish, was appointed dative testamentary executor of the last will of the decedent. The property of the estate was inventoried, and appraised at $5,816.20. In the account filed by the dative executor appeared an item of $581.62, or 10 per cent. on the inventory for attorney fees in the succession. This

item was opposed, and was reduced by the parish judge to 5 per cent. on the inventory. The court held that the public administrator, as dative executor, had the right to employ an attorney, and that the parish judge properly allowed the amount of 5 per cent. on the inventory, considering the size of the estate and the value of the services required for its proper management. This case is a precedent in small successions. Counsel for the church cite Succession of Filhiol, 123 La. 497, 49 South. 138. In that case, the estate was appraised at $341,014.84, and there was a bitter and prolonged litigation over the will of the decedent, which finally resulted in the reduction of the donation in favor of Inez Schmidt to 10 per cent. of the whole amount of the estate. Inez Schmidt, as executrix, employed two prominent attorneys to defend the will. Judge Gumby, besides defending the will, rendered services in other matters to the great benefit and advantage of the succession. By the final decree of this court Judge Gumby was allowed $14,500 and Mr. Cahn $2,500 for their services to the estate. 123 La. 514, 49 South. 144. In the same case the court said:

"We are referred to many cases involving the fees of attorneys, but they each have their own peculiar features, and throw but little light upon the question to be here decided, which is not what should have been allowed in those cases, but what should be allowed in this case."

In the syllabus written by the organ of the court it is said:

"The matter must be determined in each case with reference to the presence or absence of a variety of factors."

We find that the case at bar is similar in its essential factors to the Filhiol Case. Both involved difficult and important questions of law relating to the nullity of wills. In the Filhiol Case the inventoried value of the succession was larger, and the services of counsel in the administration of the estate were more extensive and onerous. In both cases counsel for the succession also represented the legatees.

We conclude that, the main factors being similar, the quantum of the fee should be measured by the same standard of compensation. In the Filhiol Case, the allowance was equivalent to 5 per cent. on the inventoried value of the estate. In the case at bar the total allowances exceeded 5 per cent. by $7,000. As the rule of uniformity should be observed in similar cases, we are of opinion that the fees allowed in this case to the attorneys for the dative testamentary executor should be reduced from $20,735.60 to $13,735.60.

Counsel for the Free Church of the Annunciation, in their brief, propounded the following query:

"Has the dative executor, who is nothing but an administrator, and who in this case is the public administrator, the same right and duty to defend the will that devolves upon the executor named by the deceased?"

We answer, "Yes;" as the dative executor is a substitute appointed to perform the duties and discharge the functions of a testamentary executor.

Section 3 of Act No. 87, p. 120, of 1870, reads:

"That in all testate successions when from any cause the executor cannot discharge the duties of his office, the judge shall appoint the public administrator of the parish dative testamentary executor."

It is therefore ordered that the judgment appealed from be amended by reducing the fees allowed the attorneys for the dative testamentary executor from $20,735 to $13,735, and that said judgment be further amended by decreeing that the rentals of the building occupied by the Western Union Telegraph Company from and after the death of testatrix be accounted for as a part of the legacy to the Free Church of the Annunciation, and it is further ordered that, as thus amended, the judgment below be affirmed, at cost of the appellees.

MONROE, C. J., takes no part.