51 So.2d 611

**HENRIQUES v. VACCARO.**

**No. 39667.**

March 19, 1951.

James G. Schillin, Frank T. Doyle, New Orleans, for defendant-appellant.

Fred S. Weis, New Orleans, for plaintiff-appellee and cross appellant.

HAWTHORNE, Justice.

Plaintiff, Edouard F. Henriques, an attorney, instituted this suit, seeking to recover the sum of $11,052.75 in quantum meruit for professional services, against the defendant, Mrs. Marion Black Vaccaro, individually and as universal legatee of Regis Vaccaro, deceased. After trial the judge of the district court rendered judgment in favor of plaintiff in the sum of $3,500. Both plaintiff and defendant have appealed, plaintiff seeking to have the judgment increased to the amount prayed for, and defendant contending that the amount allowed by the lower court is excessive.

Plaintiff was employed by Regis Vaccaro, a minority stockholder, to bring about the liquidation of the Tropical Ice Company, Inc., a corporation which had been engaged in the manufacture of ice and in the cold storage business. A short time after the employment of the plaintiff, Regis Vaccaro died, and the employment of plaintiff was continued by his widow and universal legatee, who is the defendant herein. The stock of the Tropical Ice Company, Inc., was owned principally by members of the Vaccaro family. The corporation was no longer engaged in business for the purposes for which it was organized, its income being de-

rived from interest on bonds owned by it, rentals from an ice plant, and dividends from shares which it owned of the stock of the Banco Atlantida, a banking concern in Honduras. Regis Vaccaro, who was not on the best of terms with the majority of the stockholders, most of whom were related to him, desired the liquidation of the corporation so that he could realize his share of its assets, and plaintiff as an attorney was employed for this purpose.

In due course the corporation was liquidated, and defendant realized for the 133 shares of stock which she owned in the corporation the sum of $14,218.58 in cash and 336 shares of stock in the Banco Atlantida. The liquidators reserved for contingent expenses some cash, the residue of which the shareholders were eventually to receive. If none of this retained fund was used for contingent expenses, Mrs. Vaccaro was to receive in cash for her stock an additional sum to make the total amount received by her $16,040.68. The record does not disclose whether any portion of the amount retained has been received by the defendant.

There was no agreement between the parties at the time of employment for the amount of the fee to be paid for plaintiff's professional services. Defendant testified that after the liquidation of the corporation plaintiff informed her that his fee would be $1,500, which she thought was excessive, and on the advice of another attorney sent him in full payment of his serv-ices a check in the sum of $750, which he refused. On the other hand, plaintiff stated that he informed defendant that she should send him a check for $1,500 as payment on account. We are sure that both parties are in good faith in this testimony, and that there was simply a misunderstanding between them in regard to plaintiff's request for $1,500.

■ In the absence of a contract, no ironclad rule can be laid down which would be applicable to every case in determining the amount due an attorney for professional services rendered. The amount due in any case will always have to be determined on the facts and circumstances surrounding that individual case. As a general proposition, this court has said that consideration should be given to the amount in controversy, the physical and mental labor involved, the responsibility incurred, the ability to pay of the party who is liable, and the legal knowledge, attainments, and skill of counsel. Dorsey v. His Creditors, 5 Mart., N.S., 399; Hunt v. New Orleans Cotton Press Co., 2 Rob. 404; Breaux, Fenner & Hall v. Francke, 30 La.Ann. 336; Succession of Percival, 138 La. 543, 70 So. 505; Gosserand v. Monteleone, 164 La. 397, 113 So. 889; Naef v. Miller-Goll Mfg. Co., 176 La. 979, 147 So. 52; Nomey v. Pacific Mut. Life Ins. Co., 212 La. 820, 33 So.2d 531, 1 A.L.R.2d 946; Adams v. Simon, La.App., 144 So. 73; Tannenbaum v. Horn, La.App., 160 So. 462; Dowling v. Centanni, La.App., 174 So. 396. We think that in

some cases consideration should be given also to the general economic conditions prevailing at the time the services are rendered, so that the fee or payment for the services, like that for any other commodity, would be the greater or the lesser depending upon whether the period is one of inflation or of deflation.

The record does not disclose that Mrs. Vaccaro's financial condition is such that she might not be able to pay the fee which we consider reasonable for the services performed.

The plaintiff's employment extended over a period of approximately six months. He had numerous consultations with his client and attended eight or nine meetings of the board of directors and stockholders of the corporation as a representative of defendant or her husband. At a meeting of the board of directors attended by plaintiff, he informed the directors that his client desired the liquidation of the corporation, but the directors representing a majority of the stockholders would not agree to this. At a subsequent meeting of the shareholders plaintiff presented a written motion proposing the liquidation of the corporation, which failed for want of a second. The directors, on the contrary, proposed to amend the charter of the corporation so that it could become a holding corporation and called a meeting of the stockholders for this purpose.

The plaintiff herein also represented another minority stockholder, Lucas A. Vac-

caro, who had employed him for the same purpose as had the defendant. Plaintiff advised the defendant and Mr. Lucas Vaccaro to obtain, if possible, a sufficient amount of stock of the corporation so that they could control a minimum of 20 per cent of its stock, and informed them that as such group of minority stockholders they would be in a position to prevent amendment of the charter of the corporation if their rights under the provisions of Section 52 of Act 250 of 1928, LSA–RS 12:52, were not satisfied. Accordingly Mr. Lucas Vaccaro obtained the stock of a relative, Miss Frances Vaccaro, and after this acquisition plaintiff's clients then owned more than 20 per cent of the outstanding stock of the corporation.

At a meeting of the shareholders called for the purpose of amending the charter of the corporation, the majority stockholders could not obtain the authorization of the owners of 80 per cent of its outstanding stock. Thereupon a motion to liquidate the corporation in kind was adopted, and as a result of this liquidation defendant received the cash and bank stock as hereinabove set forth.

Plaintiff alleges that due to his services defendant received the sum of $123,560.68, consisting of cash in the sum of $16,040.68 and 336 shares of the bank stock which he values at $320 per share, and that for the professional services rendered which brought about this result he is entitled to the fee claimed.

The record does not support the valuation of the bank stock as alleged by plaintiff, and we think this valuation is highly excessive. Regardless of that, however, what plaintiff actually received for the 133 shares of corporate stock was an amount in cash and 336 shares of the bank stock. In other words, what she received represented the value of the corporate stock already owned by her. The service plaintiff performed for his client was to bring about a conversion of her corporate stock into cash and liquid assets over which she had control. As he himself testified, his client was a minority stockholder in the corporation, and due to his services the corporation was prevented from amending its charter so as to become a holding company, and his client as a result of the liquidation got everything she was entitled to immediately, rather than having the position of minority stockholder in a holding company doing business of a highly speculative nature, with the risk of losing everything. We consider, however, that counsel's statement of the financial risk which would have been run by his client if the charter of the corporation had been amended is entirely speculative on his part, for there is nothing in the record to indicate that its past operations had not been successful financially.

When we consider all the facts and attending circumstances of this case, we do not think that plaintiff spent a great amount of physical and mental labor in the rendition of the professional services or assumed any burdensome responsibility, or that what he did on plaintiff's behalf required any unusual legal knowledge, attainments, or skill on his part. To us, therefore, the amount of $3,500 found by the district court to be due plaintiff as his fee for services rendered the defendant in this matter is eminently just, reasonable, and adequate, and the judgment will accordingly be affirmed.

For the reasons assigned, the judgment appealed from is affirmed. All costs in the lower court are to be paid by defendant, and costs in this court are to be paid one-half by plaintiff and one-half by defendant.