SAMUEL, Judge.
These four suits, consolidated for trial, are but another phase of the exhaustive litigation thus far arising from the Succession of Franz. We have disposed of other contests, La.App., 133 So.2d 140, involving claims of various creditors of the succession, in a separate opinion handed down by us this day.
The appeals now before us arise from four suits filed by examiners of questioned documents who were retained by Jones T. Prowell, attorney for Mark J. Falgoust, to aid in defending an attack on the validity of decedent’s will. Prowell and the plaintiffs entered into oral contracts by which they agreed that plaintiffs were to receive a “fair and reasonable fee”. The suits were against Falgoust in his capacity as testamentary executor, and alternatively in his individual capacity. On the original trial the court, basing its judgments on the uncontradicted testimony offered by the plaintiffs, awarded the amounts prayed for, which were:
Albert Osborn $24,250.00
George Lacy 12,500.00
Linton Godown 24,250.00
Clark Sellers 22,887.94
Thereafter, the trial judge granted a rehearing at which the defendant produced Charles A. Appel, Jr., attorney and examiner of questioned documents, who testified as an expert witness. The judgments on the rehearing were in favor of plaintiffs and against Falgoust, in his capacity as testamentary executor, and reduced the awards to these amounts:
Albert Osborn $6,250.00
George Lacy 3,500.00
Linton Godown 4,368.00
Clark Sellers 6,300.00
From these judgments each of the plaintiffs and Falgoust, as testamentary executor, have appealed.
Falgoust asserts that the judgment is excessive. He contends the plaintiffs were hired only as expert witnesses and their fees should not exceed the amount that the trial court taxed as costs against the unsuccessful opponents. (It will be observed from the separate opinion above referred to that 'the amount taxed as costs is considerably lower that the amounts the trial court awarded in these judgments.) Alternatively, Falgoust insists .that, if the experts are entitled to a greater fee than that taxed as costs, Jones T. Prowell, attorney for Fal-goust and later the succession, who retained the experts, exceeded his authority in hiring them in any capacity other than that of expert witnesses. To urge this alternative demand, Falgoust, assuming the position of a third party plaintiff, brought an action against Prowell as third party defendant.
Third party defendant Prowell, in substance, denied exceeding his authority as Falgoust’s attorney, and avers that Falgoust not only authorized the retention of the examiners of questioned documents, but accepted all of their services on his behalf.
Prowell in turn instituted a third party claim against Joseph V. Ferguson, asserting that, if he were cast, then Ferguson was liable to him for one-half of the amount of the judgment. Prowell bases this contention on a contract between him and Ferguson, wherein he assigned a one-half interest in the contract of employment as attorney for the succession to Ferguson. Having accepted the benefits of the contract, Prowell argues, he must also assume his proportionate share of the liability.
Falgoust’s contention that the examiners of questioned documents may only recover that amount which the court taxed as costs is untenable. This is a suit in contract for services rendered by plaintiffs not only as expert witnesses but also as advisors to Falgoust’s counsel in aiding and assisting *152 him to prepare and defend his case. While an expert may enter into a contract setting a definite fee for his services, in which case the litigant retaining him would be liable for the full amount of that fee upon the performances of the services, the question of how much of the fee will be taxed as costs has no relation to the contract between the litigant and his expert. Recreation and Park Commission v. Perkins, 231 La. 869, 93 So.2d 198; also see Cutitto v. Metropolitan Life Ins. Co., La.App., 172 So. 812.
In the cases before us, since the parties agreed only to a “fair and reasonable” fee, the trial judge had the difficult task of determining the services rendered and of placing a monetary value thereon. The fixing of a proper fee in each case is the basic question presented by the appeals.
We are of the opinion that the fees set by the trial judge are neither excessive nor inadequate, and are in agreement with all of his conclusions as contained in his well considered written reasons, which we therefore adopt as our own:
“On the suits of Albert D. Osborn, George J. Lacy, Linton Godown and Clark Sellers, filed November IS, 1957, the Court is of the opinion that they are nationally, if not internationally, known and recognized examiners of questioned documents, commonly known as ‘handwriting experts’, and that their services were highly material and invaluable to the interest of Mark J. Falgoust in the attack upon the will made in this cause.
“There is no need for the Coui-t to again refer to the credibility of these handwriting experts and the value of their testimony to this Succession, as the court has already done so in its opinion heretofore rendered upholding the last will and testament of the deceased, who left an estate inventoried at over $1,500,000.00.
“When this matter was first heard, a judgment was rendered in favor of plaintiffs as prayed, for the reason that their uncontradicted testimony and that of their witness, Mr. Swett, also a handwriting expert, was to the effect that their services were worth the amounts claimed by them in this case.
“A rehearing was granted herein and the case reopened to give the Testamentary Executor of this estate an-opportunity to contradict the evidence given upon the first hearing. This-evidence was heard by the Court on. July 21 and July 22, 1958.
“It is well to observe that the plaintiffs, when accepting employment, had' no discussions whatever with defendant or his attorneys and informed them as to the minimum amount and maximum amount which they would charge-for their services. In the Court’s opinion they should have done so. The-Executor at no time approached these-plaintiffs, either in the presence of, or out of the presence of, his counsel, and asked them how much approximately-their fees would be. In the Court’s, opinion he should have done so.
“Plaintiffs rendered their services,, and their services were accepted, at a. time when the Succession was in need' of them; they acted to the best of their ability; the Executor was present in, court all during the trial of the case involving the validity of the will, heard plaintiffs’ testimony, ratified and confirmed the acts of his counsel Mr. Prowell in employing plaintiffs by such appearance and acceptance of their services, and acquiesced in what plaintiffs and his said counsel did in this, matter.
“It appears that, from the testimony taken on July 21 and 22, 1958, there are-two methods of charging fees employed by examiners of questioned documents. One is the ‘per diem’ method, and the *153 other is the ‘fair and reasonable’ method.
“The evidence shows that these plaintiffs were contacted by Mr. Jones T. Prowell, who is now too ill to appear and testify. Mr. Ferguson admitted that he had had no contact with the plaintiffs with regard to their compensation in this matter.
“The evidence preponderates to the •effect that there was an agreement between Mr. Prowell and each of the plaintiffs to the effect that their fees would be ‘fair and reasonable’. The agreement went no further.
“The testimony further preponderates to the effect that there was never a mention of a fee on a ‘per diem’ basis.
■“Therefore, the Court must coordinate all of the testimony, both as to ‘per diem’ charges and ‘fair and reasonable’ charges, in order to fix what it believes to be a ‘fair and reasonable’ fee for •each of the plaintiffs.
“It is clear to the Court that, in the instant case, considering pages 89 and 90 of Exhibit Doud 1 (a pamphlet offered in evidence by counsel for Plaintiffs), the fees of plaintiffs must be fixed at larger amounts than those fixed by Mr. Appel and at smaller amounts than those prayed for. Mr. Doud’s statement regarding per diem fees, using document examiners as an example, appearing on page 90, is significant and modifies the significance of factors A to E, 'inclusive, page 89.
“In passing, the Court notes that Dr. Hyman’s fee of $10,000.00 has been recognized by the Executor.
“Mr. Osborn testified that he informed Mr. Prowell before he commenced to testify, but after his preliminary examination of the will, that he bad received a fee of $12,000.00 in the Moody case, which was tried in Baton Rouge, Louisiana, and that his fee in the Franz case would be ‘considerably more’. There was no positive affirmative proof as to what he meant by ‘considerably more’. Nor was there any meeting of the minds as to payment of as much as $12,000.00.
“Mr. Osborne has prayed for $25,-000.00, including his expenses, less $750.00 heretofore received by him, or a balance of $24,250.00.
“Counsel for the Executor urge, in their brief on rehearing, that he should receive a maximum of 28 days at $192.-00 per day, or $5,376.00, less $750.00 received by him, or a balance of $4,626.-00.
“The Court is of the opinion that for his time and services he should receive $7,000.00, less $750.00 heretofore received, or a balance of $6,250.00.
“Mr. Lacy has asked for $12,500.00, one-half of the amount prayed for by Mr. Osborn. The Court believes that he should receive $3,500.00. His time and services are worth much more than the $1,000.00 urged by counsel for the Executor.
“As to Mr. Godown, his time and services with the electrophoresis machine and his testimony with regard thereto were highly important. A comparison of Mr. Godown’s testimony with that of Dr. Kirk’s testimony will, in the Court’s opinion, disclose this. The Court believes that Mr. Godown is entitled to be paid $4,500.00 for his services, plus $618.00 expenses, or $5,-118.00, less $750.00 heretofore received by him — a balance of $4,368.00. The Court does not feel that it can accept the figures of $2,000.00, plus $618.00 expenses, urged by counsel for the Executor.
“As to Mr. Sellers, counsel urge that he is entitled to no more than $4,800.00 *154 for services and expenses. He has prayed for ten per cent less than Mr. Osborn, plus his expenses. The Court feels that he should receive judgment for $6,300.00.
“The Court has searched high and low for a precedent or precedents for fixing the fees of plaintiffs in this particular matter. It has been unable to find one precedent. The matter is one which has given the Court much concern, as it is apparent that this case could, and no doubt will, be used as a yardstick in fixing similar fees in the future.
“It is true that each case must stand on its own facts, but it is equally true that lawyers, litigants and expert witnesses should have some understanding as to what the maximum and minimum fees will be in matters of this kind, where there has been no decision by an appellate court in a bona fide contested case to guide them.
“The judgments will further provide that they are rendered against Mark J. Falgoust in his capacity as Testamentary Executor of this Succession, and will be referred to the administration thereof by said Testamentary Executor, with the claims of other creditors of like rank and rating, to be paid in due course of the administration, and that the execution of said judgments is stayed until further orders of this Court.
* * * * *
“As to the petitions of impleader against Jones T. Prowell, filed December 27, 1957, by Mark J. Falgoust, individually and as Testamentary Executor, in his answers, there is no evidence to sustain the allegations thereof; therefore, said petitions of impleader and the demands therein contained will be dismissed. Consequently, the petition of interpleader, and third party demand, and call in warranty against Joseph V. Ferguson II, filed with said Prowell’s answers on February 4, 1958, will also be dismissed.”
For the reasons assigned all of the judgments appealed from, being judgments in those matters bearing our Docket Nos. 82, 83, 84 and 85, are affirmed.
Affirmed.