133 So.2d 140 (1961)
Succession of Katie ROTH, Widow of Frederick FRANZ.
Nos. 71, 79, 90.
Court of Appeal of Louisiana, Fourth Circuit.
June 30, 1961.
Rehearing Denied October 9, 1961.
Certiorari Granted November 29, 1961.
Certiorari Denied November 29, 1961.
*141 Joseph V. Ferguson, II, New Orleans, Thomas J. Kliebert, Gramercy for Mark J. Falgoust, both individually and as executor, plaintiff-appellant.
George Piazza, New Orleans, for Kleis opponents, defendants-appellees.
Lee C. Grevemberg, Felix W. Gaudin, New Orleans, for Grimaldi Heirs, defendants-appellees.
Felix W. Gaudin, Jones T. Prowell, Harry McEnerny, Jr., New Orleans, for National *142 American Bank of New Orleans, provisional administrator, defendant-appellee.
Joseph V. Ferguson, II, New Orleans, Thomas J. Kliebert, Gramercy, for Mark J. Falgoust, both individually and as executor, plaintiff-appellant.
Lee C. Grevemberg, New Orleans, for Felix W. Gaudin, plaintiff-appellant.
Joseph V. Ferguson, II, New Orleans, Thomas J. Kliebert, Gramercy, for Mark J. Falgoust, testamentary executor, defendant-appellee.
Before JANVIER, McBRIDE and SAMUEL, JJ.
Certiorari Granted in Application of Mark J. Falgoust, November 29, 1961.
Certiorari Denied in Application of Felix W. Gaudin, November 29, 1961.
SAMUEL, Judge.
These consolidated cases, together with four others also consolidated, La.App., 133 So.2d 150, are the result of long and complex litigation involving the Succession of Franz. Prior appellate litigation is to be found in Succession of Roth, 230 La. 33, 87 So.2d 719, Succession of Franz, 232 La. 310, 94 So.2d 270, and Succession of Franz, 236 La. 781, 109 So.2d 92.
Mrs. Franz was interdicted by judgment of the Civil District Court for the Parish of Orleans on December 3, 1951, in a proceeding (#308-348) instituted by her first cousins and only legal heirs, John Kleis, et als., hereinafter referred to as the Kleis opponents. Her curator was the National American Bank of New Orleans. Thereafter, she was confined in DePaul Sanitarium until her death on October 23, 1953.
The decedent left an estate in excess of $1,000,000. She also left three wills and a codicil. The earliest will, dated in 1923, bequeathed all of her estate to her husband, who predeceased her in 1939, and this will is not involved in the litigation.
The second will, in the nuncupative form by public act and dated April 4, 1945, contained various special legacies, failed to dispose of the balance of testatrix's property, made August H. Grimaldi, Sr., executor and appointed Felix W. Gaudin as attorney. There was a codicil, dated October 22, 1947, to the nuncupative will which added two legacies and made Grimaldi and Mark J. Falgoust residuary legatees, each for one-half. The latest will, in the olographic form and dated March 17, 1948, also made a number of special legacies to various persons including one to Falgoust, who was also named universal legatee and appointed executor with seizin and without bond.
The Kleis opponents filed a petition opposing the probate, registry and execution of the olographic will when sought by Falgoust, and also attacked the codicil to the nuncupative will, on the alternative grounds that the olographic will was not entirely written, dated and signed by the testatrix, that the testatrix lacked testamentary capacity due to insanity on the dates of the olographic will and the codicil, that the testatrix acted under fear, duress and undue influence on said dates, and on other grounds which need not be enumerated here.
Mark J. Falgoust and various persons named legatees in the olographic will filed answers to the Kleis petition denying the allegations thereof and asserting the validity of the will attacked. Gaudin and the executors of the estate of August H. Grimaldi, Sr. also filed pleadings attacking the validity of the olographic will on the same, and additional, grounds as those contained in the Kleis petition.
During the course of a lengthy trial the District Court appointed the National American Bank of New Orleans as the provisional administrator of the estate and named Jones T. Prowell, then attorney for Falgoust, and Gaudin, attorney for Grimaldi, as attorneys for the administrator.
The District Court subsequently held the olographic will to be valid and dismissed all oppositions thereto. This judgment was affirmed by the Supreme Court (232 La. 310, 94 So.2d 270).
*143 The three instant cases, an opposition to the account of the provisional administrator (No. 79), a rule to tax costs (No. 71), and a suit for attorney's fees for services rendered as attorney for the provisional administrator (No. 90), arose after the case involving the validity of the olographic will had become final.
The opposition was filed by Falgoust. He originally opposed every item on the account of the provisional administrator (the administration extended over a period of approximately 3½ years), but in this Court he complains only about the following items, his opposition thereto having been dismissed and from which dismissal he has appealed:

(1) Fee of the National American
 Bank of New Orleans
 for its provisional administration----- $15,055.43
(2) Commission to Real Estate
 Manager-------------------------------- 22,714.90
(3) Caretaker's salary at 2318
 St. Charles Ave., the former
 residence of the decedent-------------- 8,400.00
(4) Caretaker's expenses at 2318
 St. Charles Ave------------------------ 684.94
(5) Commissions paid to C. J.
 Tessier for execution of
 lease at 339 Carondelet St.------------ 217.00
(6) Commissions paid to C. J.
 Tessier for execution of
 lease at 901 Bourbon St.--------------- 361.00
(7) Interest paid on extended
 payment of Federal Estate
 Tax------------------------------------ 3,697.30
(8) Fees paid to August Wegmann
 for preparation of
 1954, 1955 and 1956 Federal
 Income Tax Returns--------------------- 300.00
 __________
 Total $51,430.57

The pertinent articles on costs to be borne by a succession are:
"The expenses of the seals, if they have been affixed, of the inventory and sale, and of the account rendered by the administrator, and other charges of the same kind, are at the cost of the succession." LSA-C.C. Art. 1070.
"The expenses incurred by the executor for affixing the seals, for the inventory, for the accounts and the other charges relative to his functions, shall be defrayed out of the succession." LSA-C.C. Art. 1682.
Counsel for Falgoust do not contest the authority of the court to appoint a provisional administrator but contend that such authority arises only out of the provisions of LSA-Civil Code Arts. 2972-2981 and Code of Practice Arts. 269-283.1 and 976, all except the last being concerned with sequestration under the rules of which the charges are to be paid from the proceeds of the property sequestered only in the event the party provoking the sequestration is successful. They contend that a provisional administrator is limited to guardian or keeper duties and that the loser must pay the charges of such an administration. They rely principally upon Succession of Clark, 30 La.Ann. 801, and Succession of Drysdale, 122 La. 37, 47 So. 367, and 124 La. 256, 50 So. 30.
In Clark there was a contest between the children of a first and second marriage and the third wife concerning the naming of an administrator. Pending a settlement of that issue, the trial court appointed a provisional administrator and later revoked the appointment. On appeal, the Supreme Court indicated that the appointment of a provisional administrator was a matter entirely within the discretion of the trial court, as also was the revocation of that appointment. In describing the office of provisional administrator, the Court said: "But under such an appointment the appointee would be rather a guardian or keeper than an administrator, * * *."
In Drysdale there was a dispute about the validity of a will and the trial Court placed the succession property in the care of a sheriff. The appellate Court was concerned only with questions involving appeal and the validity of the will and did *144 not comment upon the appointment, merely stating as a fact that it had been made. In the last situation the decree ordered that the case be remanded for further trial, with the cost of appeal, as well as other costs to abide the final result.
Neither case is authority for the point cited. The language used in Clark has reference only to the particular facts involved in that case, while the language in the Drysdale decree, from which counsel draws the inference that the phrase "as well as all other costs" includes the cost of the administration, is the usual wording where there is a remand for further trial and does not indicate which litigant would ultimately be required to pay the cost of administration.
Art. 976 of the Code of Practice has not been given the strict interpretation urged by counsel. In Succession of Comeau, 158 La. 370, 375, 104 So. 119, 120, the Court said:
"* * * The intention of the writers of article 976 of the Code of Practice was that the administrator, whom the judge was required to appoint if a creditor demanded it, during the taking of the inventory, would be merely a detainer or keeper of the property until, at the end of the term for deliberating, it should be decided whether this detainer or keeper should turn over the property to the heirs or go on and administer the estate."
While the office of provisional administrator as now being discussed has been created by the jurisprudence rather than by statutory law, the trial court, in its sound discretion, has the authority to appoint a provisional administrator. Succession of Hair, La.App., 195 So. 43; Succession of Coco, 184 La. 144, 165 So. 646; also see "Preliminary Statement", 1 LSA-C.C.P. at pg. 460. The problem is now covered by Art. 3111 of the LSA-Code of Civil Procedure, which was not in effect at the time of the appointment involved in the instant case.
The record reveals beyond any question that the appointment was necessary. At that time the estate had approximately $250,000 in cash and some ninety pieces of real estate producing rentals of approximately $8,000 per month. It is our conclusion that the trial court had the authority to appoint the provisional administrator and that, the source of such authority being independent of any codal articles involving sequestration, the sequestration rules relative to payment of costs are not applicable.
The appointment being valid, under LSA-Civil Code, Arts. 1070 and 1682, quoted above, it follows that the fee of the provisional administrator, and the costs of that administration, are proper items on the account. There is no contention that the fee itself, 5% of the income received, was excessive.
Defendants point to the fact that the judgment appointing the provisional administrator was rendered contradictorily against Falgoust and he has not appealed therefrom. They contend that, the time for taking an appeal having elapsed, the judgment has become final and conclusively binds him. Our position as to the validity of the appointment of the provisional administrator makes it unnecessary for us to discuss or rule on this contention.
The real estate manager mentioned in item (2) collected rent, secured individual tenants and recommended repairs. The moneys paid to him were based on a commission on rents collected. He was appointed originally in the interdiction proceedings and, by order of the trial court, was continued in the same capacity under the provisional administrator. His was a proper and necessary function of the administration and the cost thereof, which we hold to be reasonable and necessary, is a proper item on the account.
Similarly, it was necessary for the administrator to place a caretaker at the former residence of the decedent, which *145 was vacant, this being item (3), and to pay item (4), which latter consists only of accumulated monthly charges for electricity, gas and water supplied to the residence and a small amount for rug cleaning and storage.
Items (5) and (6) represent the standard minimum commissions paid to a real estate agent in connection with the rental of two business properties under leases covering periods of years. These certainly represent the actions of a prudent administrator and the succession must bear the cost thereof.
Item (7) is also proper. The record reveals that a delay in payment of Federal Estate Taxes, which delay caused the payment of interest, was due to the extended litigation over which the administrator had no control.
Item (8) also resulted from the actions of a prudent and careful administrator in obtaining a qualified person to prepare the income tax returns and the fee charged was most reasonable.
Falgoust also filed the rule to tax costs and has appealed from the judgment thereon. He seeks to have that judgment, which awarded a total of $6,101.16, amended so as to include the following:

(1) Fee for August Wegmann,
 preparation of Federal Estate
 Tax------------------------------$2,500.00
(2) Undisputed Costs----------------- 1,401.16
(3) Cost of Depositions-------------- 1,629.94
(4) Fee of Dr. Hyman-----------------10,000.00
(5) Fee of Dr. Tharp Posey----------- 5,000.00
(6) Fee of Dr. Holbrook-------------- 4,000.00
(7) Fees of Osborn, Lacy, Godown
 and Sellers as fixed by
 Court of Appeals No. 82, 83,
 84 and 85

In addition, Falgoust has alternately prayed that those amounts which he sought to have deleted from the provisional account, and which are held to be properly included therein, together with the total fee of Gaudin and Jones T. Prowell, as attorneys for the provisional administrator, if such fee is held chargeable against the succession, be also taxed as costs.
In brief and in argument defendants in rule have sought certain changes in the judgment insofar as the solidary liability is concerned. But they have failed to appeal from the judgment or answer the appeal of Falgoust. The contentions therefore are not properly before us and are not considered. Calhoun v. Northern Ins. Co. of New York, La.App., 117 So.2d 285; Davis v. Reynolds, La.App., 96 So.2d 368; Labat v. Labat, 232 La. 627, 95 So.2d 129; Schech v. Pittman, 51 So.2d 119.
The statutes pertinent to the taxing of costs and in effect at the time of the trial of the rule were:
"The costs to be paid by the party cast include not only the taxed costs, but also all the expenses incurred in taking testimony by commission, and the compensation allowed for their services to such experts, auditors, or judicial arbitrators, as may have been appointed in the suit; and also the costs of copies of notarial acts, of judgment, and other copies of the records of other public officers, necessary in the cause." Code of Practice Art. 552.
"The costs of the clerk, sheriff, witnesses' fees, costs of taking depositions and copies of acts used on the trial, and all other costs allowed by the court, shall be taxed as costs." LSA-R.S. 13:4533.
"Witnesses called to testify in court only to an opinion founded on special study or experience in any branch of science, or to make scientific or professional examinations, and to state the results thereof, shall receive additional compensation, to be fixed by the court, with reference to the value of the time employed and the degree of learning or skill required." LSA-R.S. 13:3666.
*146 Item (1), the fee charged for the preparation of the Federal Estate Tax for the succession, is an ordinary, necessary and proper charge, which the succession would have been required to bear in any event, and was correctly disallowed.
The undisputed costs which constitute all of Item (2), being the fees of the clerk, sheriff, etc., were allowed in the judgment of the lower court and the request that the judgment be amended to include this item apparently has been made in error.
Item (3) has reference to events which took place after the Kleis opponents filed their suit attacking the olographic will and codicil. Falgoust obtained an order to take discovery depositions from three of the Kleis petitioners who lived in the State of New York and also employed New York attorneys to file proceedings in a New York court to obtain the depositions. The total cost of the depositions so taken consists of the fee of the New York notary, transportation costs for the New Orleans attorney representing Falgoust, and fees and costs paid to the New York attorneys. Only one of these Kleis opponents testified in the trial attacking the will; the other two remained in New York. All three depositions were introduced in evidence during the course of the trial here.
The applicable statutory law in effect at the time of the trial was Act 202 of 1952, particularly LSA-R.S. 13:3745, which section appears under the sub-title "Applicable To Depositions And Discovery". The portions of LSA-R.S. 13:3745 which are pertinent to the instant case are as follows:
"At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had due notice thereof, in accordance with any one of the following provisions:
"(1) Any deposition may be used by any party for the purpose of (contradicting) or impeaching the testimony of deponent as a witness.

* * * * * *
"(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: * * * (b) that the witness is at a greater distance than 100 miles from the place of trial or hearing or is outside of this state, unless it appears that the absence of the witness was procured by the party offering the deposition; * * *."
Thus there was statutory authority for admitting the depositions in evidence if they met the requirements of those portions of the section immediately above quoted. Under LSA-R.S. 13:4533, also quoted hereinabove, the cost of taking depositions and copies of acts used on the trial can be taxed as costs. Therefore, it would seem that if the depositions were legally admissible, they should be taxed as costs.
We have carefully examined the contents of the depositions and find that they are without any evidentiary value whatsoever. A large part of the contents was hearsay and the balance was not material to the issues involved in the trial of the case. It would seem therefore that the phrase contained in the first paragraph of LSA-R.S. 13:3745, "so far as admissible under the rules of evidence", prevents appellant from shifting the cost of what was purely discovery from himself to the appellees by the simple process of getting into evidence documents which are of no assistance to the court in determining the issues. We have no objection to discovery as such and the right to obtain the information is authorized under the statute. But the only question involved here is the taxing of costs as such. The item was properly disallowed.
Items (4), (5) and (6) are concerned with the fees of the three medical experts who were retained by Falgoust. The amounts which he desires this court to tax *147 as costs are $10,000 for Dr. Hyman, $5,000 for Dr. Posey and $4,000 for Dr. Holbrook, charged by the doctors and recognized by Falgoust. These amounts were not fixed by any court action. The judgment on the rule taxed as costs $1,000 of the fee of Dr. Hyman, who testified at length in two categories, and $100 of the fee of Dr. Holbrook, who testified briefly on one occasion. No part of Dr. Posey's fee was allowed as costs.
Obviously the amount to be awarded as costs in connection with the testimony of expert witnesses under LSA-R.S. 13:3666, quoted above, being concerned only with the value of the time employed and the degree of learning or skill required is, in the instant case, less than the total fee charged by them, which latter would include all of the assistance given by such experts to the attorneys in preparing for trial. See Recreation and Park Commission v. Perkins, 231 La. 869, 93 So.2d 198; Cutitto v. Metropolitan Life Ins. Co., La. App., 172 So. 812. The amount of the award is within the sound discretion of the trial court and we find no abuse of such discretion in the awards to Doctors Hyman and Holbrook. We agree also that no portion of Dr. Posey's fee should be taxed as cost in view of all the circumstances and the fact that he did not testify.
Item (7) is concerned with the fees of the examiners of questioned documents who testified as expert witnesses on behalf of Falgoust in the suit attacking the validity of the olographic will. These fees are considered in the other opinion handed down by us this day under Nos. 82, 83, 84 and 85 of our docket.
The trial court taxed as costs a portion of each such fee, allowing $1,000 for Osborn, $600 for Lacy, $1,000 for Godown and $1,000 for Sellers. For the same reasons mentioned in connection with items (4) and (6) above, we are of the opinion that the ruling of the lower court was correct.
Relative to the prayer that those amounts which we have held to be properly included in the account be taxed as costs, it suffices to say that in our discussion of the opposition to the account we came to the conclusion that all of the amounts which Falgoust sought to have deleted from that account were properly charged to the succession. The appointment of the provisional administrator being valid and the charges being such as the law requires the succession to pay, it follows that these items cannot be taxed as costs.
The only remaining figure which appellant seeks to have taxed as costs is the fee of Gaudin and Prowell as attorneys for the provisional administrator. The case involving Gaudin's portion of this fee, No. 90, is discussed hereinafter.
These two men were appointed by the trial court as attorneys for the provisional administrator and we have already held that the appointment of the provisional administrator was valid. There can be no question about the fact that the administrator had need of attorneys and benefitted from the services rendered by them. This is a charge relative to the function of the administrator and must be borne by the succession. The trial court was correct in refusing to tax the same as costs.
Falgoust further contends that the defendants are responsible for the extraordinary costs, fees and expenses which were incurred in the protracted litigation and as a result of the appointment of a provisional administrator. His counsel argue that defendants' responsibility results principally, but not exclusively, from what is called the unfounded and improper allegations of forgery, which defendants made no attempt to prove and which provoked the provisional administration, or at least caused the same to be continued for an unreasonably long time. Accordingly, plaintiff in the rule for costs further and alternatively prays that if any part of the amount sought to be taxed as costs is determined to be an item or items of damage and not *148 so taxed, there be reserved to the succession and to Falgoust, individually, the right to recover such item or items.
We have authority only to rule upon those matters properly before us which, in this instance, are confined to whether or not the various items, or any of them, are taxable as costs. It follows that we are without authority to make such a reservation. If the succession or Falgoust possess such rights, they do so independently of any action by us. Accordingly and additionally, they have no need of the reservation for which they pray.
We now address ourselves to the suit (#90) filed by Felix W. Gaudin for an attorney's fee in the amount of $50,000 for services rendered by him as counsel for the provisional administrator, National American Bank of New Orleans. There was judgment against the succession fixing this fee at $9,000 and plaintiff has appealed. He prays that the fee be increased to $50,000.
Plaintiff and Jones T. Prowell (whose fee was settled out of court), each of whom represented litigants in the will contest, were appointed by the court as attorneys for the provisional administrator. They acted in that capacity for the duration of the provisional administration, a period of approximately three and one-half years, during which time the administrator collected $313,499.87 and expended $247,410.02. Its fee was $15,055.43.
Plaintiff's testimony regarding the services rendered by him was as follows:
He kept no daily or hourly record, but from memory believes that he spent in excess of 1,000 hours on behalf of the provisional administrator. This time consisted of: 60 hours in court appearances; 50 hours in consultation with tenants and real estate agents; 134 hours preparing, filing and obtaining some 60 court orders; 300 hours in consultation with Messrs. Smith and McEnerny, respectively trust officer and general counsel for the administrator and with Mr. Prowell; 360 hours in the trial of the case; 150 hours relative to personal inspection of succession real estate, particularly certain property which was expropriated by the bridge authority (the authority originally being willing to pay only $10,000 and finally paid $20,000); 25 hours in research relative to the appointment of the bank as provisional administrator; 15 hours checking interdiction proceedings of Mrs. Franz, and three or four days proving the final account. He also testified that his suggestions relative to a readjustment of the inventory and the handling of certain tax matters saved the estate a considerable amount in taxes.
Other witnesses for the plaintiff testified that his estimate of hours spent could be substantially correct, although they were not in a position to verify the same. The trust officer did confirm the estimate of 300 hours in various conferences with that officer and his staff, and stated that on some occasions plaintiff assisted him in estimating the need of repairs, a matter which the bank ordinarily took care of itself without legal advice but preferred to have such advice in the instant case because of the extreme hostility and bitterness connected with the litigation. Other witnesses corroborated the attitude resulting from the litigation, emphasizing that Falgoust appeared to object to everything.
Several members of the local bar testified for the plaintiff. Their opinions differed on the amount of a proper fee for the services rendered but ranged between $50,000 and $100,000.
Plaintiff's estimate of the time spent by him on behalf of the provisional administrator is clearly excessive and, in some instances, time so claimed was spent on behalf of other interests. He appears in various phases of this litigation in several capacities. In addition to being attorney for the provisional administrator, he was also attorney for one of the litigants, Grimaldi (and later his heirs), and himself a litigant in proper person, in the will contest *149 and other suits subsequent thereto. He allocates 60 hours for court appearances and conferences with the trial judge from October 24, 1953, to December 20, 1953, although he was not appointed attorney for the administrator until November 6, 1953. He claims an additional 360 hours when he was present in court during the trial of matters involving the validity of the will and it is quite clear from the record that the provisional administrator was not concerned with, or interested in, that litigation and was not a party to any of those proceedings. The appearances were undoubtedly made but on behalf of the plaintiff himself or of his client, Grimaldi. Nor are we impressed by the testimony relative to the hostility involved on the part of Falgoust. The provisional administrator acted at all times through orders of the court and all of those orders were obtained ex parte without contest.
There are many factors which enter into the fixing of an attorney's fee. While there is no specific formula and each case rests on its own facts, generally the considerations are: the responsibility incurred, including the importance of the litigation; the extent and nature of the work performed; and the legal knowledge, attainments and skill of counsel. McGovern v. Gilbert, La.App., 127 So.2d 93; Henriques v. Vaccaro, 218 La. 1020, 51 So.2d 611. Expert opinion may be used as a guide but it is not necessarily controlling. Peiser v. Grand Isle, 224 La. 299, 69 So.2d 51; Peltier v. Thibodaux, 175 La. 1026, 144 So. 903.
Of particular importance here is the rule that where the services are rendered under the eyes of the court, the judge is fully able to estimate and adjudge the value thereof. Watkins v. Abshire, La. App., 108 So.2d 666; Williams v. Ralph R. Miller Shows, La.App., 17 So.2d 67, amended La.App., 17 So.2d 389.
There can be no question about the legal knowledge, skill and competence of the plaintiff and this was recognized by the trial judge. But plaintiff is entitled to be paid only for services rendered to the bank in its capacity as provisional administrator and in that capacity the bank was charged solely with the duty of administering the estate until the executor was determined and recognized. As compared to many individuals who act as administrators or executors, and particularly in the instant case where for several years following Mrs. Franz's interdiction it had acted as curator of the estate, the bank was exceptionally well qualified and able to discharge that duty with a minimum of legal advice. The nature of the work performed by plaintiff was generally uncomplicated, the responsibility incurred was minimal and, with the exceptions of the taking of some estate property by the bridge authority (which was compromised) and the opposition to the account, there was no litigation.
The trial judge properly held that there could only be one fee divided between the two attorneys who represented the provisional administrator. He was in an exceptionally advantageous position, and fully able, to estimate and adjudge the services rendered under the eye of the court. He itemized his conclusion as follows:
"Analyzing the services here, and breaking them down on a piece basis, the 60 motions filed in court ex parte without a contest, and allowing $50.00 each, the service in connection therewith would be worth $3,000.00. The $10,000.00 increase in the property expropriated, at 20% thereof, would add another $2,000.00. Allowing $200.00 for the day spent in court defending the final account would make a total fee for these three services of $5,200.00. For general consultation and advice over the telephone and in interviews, for a period of 42 months, if allowed a retainer of $300.00 a month, would be $12,600.00, or a grand total of $17,800.00 for both counsel. Since Mr. Prowell has been paid for all his services, and would be entitled to one-half of the $17,800.00, Mr. Gaudin would *150 be entitled to $8,900.00, or, in round figures, $9,000.00."
We are of the opinion that the fee thus fixed is not inadequate
For the reasons assigned all of the judgments appealed from, being judgments in those matters bearing our Docket Nos. 79, 71 and 90, are affirmed.
Affirmed.
McBRIDE, Judge (concurring).
I agree with everything the majority of the court has said in this opinion, except such remarks as would tend to minimize the services rendered by Mr. Gaudin and restrict his fee to $9,000.
I have carefully considered the record with reference to the services rendered and am convinced that such were of great value to the estate, and considering the amount of the succession assets in connection with the testimony of the veteran attorneys produced as expert witnesses with reference to the worth of such services, I feel Mr. Gaudin's fee should be not less than $20,000. It is true Mr. Gaudin was one of the two attorneys appointed to represent the provisional administrator. But it must be remembered that this provisional administration lasted over a period of more than three years, and the provisional administrator was charged with the administration of the whole estate during that tenure. While the provisional administration prevailed, the will contest was taking place, and the fee of the attorneys for the provisional administrator should not be confused with the fee of the attorney employed to represent Falgoust in the contest over the validity of the testatrix's will. I believe that Mr. Gaudin's services did cover a major portion of the time over which this succession was pending in court (except the contest over fees), and I think his services are worth not less than $20,000. Therefore, I can but concur in the decree.