195 So.2d 416 (1967)
In re Interdiction of Mollie Redman LOMM.
No. 2356.
Court of Appeal of Louisiana, Fourth Circuit.
February 13, 1967.
Rehearing Denied March 6, 1967.
Writ Refused April 14, 1967.
*417 Zelden & Zelden, Sam Monk Zelden, New Orleans, plaintiff in rule.
David H. Seelig, Richard A. Dowling, New Orleans, defendants in rule.
Before YARRUT, SAMUEL and CHASEZ, JJ.
SAMUEL, Judge.
This is an appeal taken by the curator of an interdict from an adverse judgment on a rule nisi. The judgment awarded plaintiff in rule an attorney's fee of $7,000, payable out of the assets of the interdict's estate, for legal services rendered to the undercuratrix. The rule was brought in the interdiction proceedings.
In this court appellant filed an exception, which he has labeled no right or cause of action, seeking dismissal of the rule for the reason that attorney's fees cannot be collected in a summary proceeding. Appellant also contends: (1) the fees claimed are not due by the estate of the interdict but by the undercuratrix personally because no permission was ever requested of, or given by, the court authorizing her to retain an attorney, the legal services rendered by plaintiff in rule were only for the benefit of the undercuratrix personally, and none of those services were beneficial to the interdiction but, to the contrary, only delayed, harassed and impeded the orderly proceedings thereof; and, alternatively, if it should be held that the interdict's estate is responsible for the fee, (2) the award of $7,000 is excessive.
The interdict was Mrs. Mollie Redman Lomm. Her husband was her curator and the daughter of the interdict and the curator, Miss Barbara Lomm, an emancipated minor, was the undercuratrix. Mrs. Lomm, who died after this appeal had been taken, remained in a hospital in a coma for approximately two years immediately preceding her death. Although we do not attempt to determine the exact value of her estate, from the record before us, including testimony taken, it appears that the same had a value of approximately $500,000 prior to payment of expenses, particularly medical and hospital charges, and consisted of both immovable and movable property. Plaintiff in rule, Mr. Sam Monk Zelden, a prominent practicing attorney in the City of New Orleans, was retained by the undercuratrix to represent her following a telephone conversation between him and Miss Lomm's aunt, a sister of the interdict and a resident of New York. He served as such counsel from the time Miss Lomm retained him, in June, 1964, to the time she dispensed with his services, in June, 1965, a period of one year. He was retained without court authorization and the curator made no objection to such employment prior to the filing of the rule to fix the fee.
In examining the record for the purpose of determining the amount of work done by plaintiff in rule we find that he filed numerous petitions and motions testing curator's bond, to amend and traverse inventories, for removal of the curator for alleged failure to perform his duties, to require the curator to return property allegedly belonging to the separate estate of the interdict, to examine the contents of a bank box, in opposition to a provisional account, to the withdrawing of various items from a bank box, to remove funds from Covington to a New Orleans bank, for an accounting by the curator, and to compel the curator to pay certain debts of the interdict, particularly medical and hospital expenses during the two years she remained in a coma. Some of these pleadings were by joint motion but the great majority were made by the undercuratrix alone. Plaintiff in rule made court appearances in connection with the trial of some of these and other matters. In addition, he was a witness to the taking of an inventory in Covington and he and the attorney for the curator were authorized and required for *418 a short time to pay the weekly expenses of the interdict out of an escrow account in a New Orleans bank from which account withdrawals could be made only by those two attorneys. Plaintiff in rule testified, without contradiction, that he had at least fifty office conferences with the undercuratrix and several additional such conferences at his home, several conferences with the curator, ten conferences with various opposing counsel, three or four pretrial conferences with attorneys for the city relative to expropriation of property belonging to the interdict, the last being a matter in connection with which he filed an answer on behalf of the undercuratrix, and made fifteen or twenty court appearances. He estimated, also without contradiction, that he spent between 225 and 250 hours in necessary work involving the interdiction and Miss Lomm in her capacity as undercuratrix.
Two prominent members of the local bar testified on behalf of plaintiff in rule. One was of the opinion that $6,500 was a proper fee for the services rendered; the other felt that a proper fee would be $10,000.
It is true, as appellant contends, that summary proceeding (by rule to show cause) cannot be used to fix and recover attorney's fees; an attorney is required to bring ordinary process for that purpose. LSA-C.C.P. Arts. 2591 and 2592; Pittman Const. Co. v. Housing Auth. of New Orleans, 248 La. 471, 179 So.2d 900. However, under LSA-C.C.P. Arts. 926, 928 and 2593 the objection to the unauthorized use of summary proceeding is a dilatory exception which must be pleaded prior to answer or judgment by default and such an exception to a rule to show cause must be filed prior to the time assigned for trial of the rule. Here appellant made no objection to the form of proceeding in the trial court. His first and only objection thereto is contained in the exception he filed in this court. That exception seeks dismissal of the rule solely on the ground that attorney's fees cannot be collected in a summary proceeding. Clearly this is not, as labeled, either of the preemptory exceptions of no right or no cause of action; it is the dilatory exception to the unauthorized use of summary proceeding which cannot be initially filed in the appellate court. By failing to timely file the exception in the trial court appellant has waived his right to object to the improper summary proceeding.
We are also of the opinion that appellant's first contention, relative to the absence of court authorization permitting the undercuratrix to retain an attorney and the alleged facts that the legal services rendered by plaintiff in rule were only for the benefit of Miss Lomm personally and were not beneficial to the interdiction, is without merit.
Generally, as provided by LSA-C.C.P. Art. 4553, the duties, rights and responsibilities of the undercurator of an interdict are the same as those of an undertutor. And the undertutor is not personally liable for expenses of litigation, including attorney's fees, in matters involving the tutorship unless the undertutor acted in bad faith; where the undertutor has acted in good faith such expenses must be borne by the estate of the minor. Succession of Samuels, 21 La.Ann. 15; Lacey v. Lanoux, Tutrix, 19 La.Ann. 153.
From our reading of the record in the instant case we are satisfied that, although the disagreements between the curator and the undercuratrix, father and daughter, became a somewhat bitter family fight, the undercuratrix did act in good faith. And as appellant has not called our attention to any provision of law, and we know of none, to the effect that under all the facts and circumstances here present an undercurator cannot employ counsel in matters involving the curatorship without first obtaining court authorization therefor, we hold the trial court correctly ordered that the fee of the attorney for the undercuratrix be paid out of the assets of the *419 interdict. The undercuratrix was an emancipated minor who certainly was in need of counsel.
Nor do we find that the legal services rendered were only for the benefit of Miss Lomm personally. It is true that in some instances, as for example the preservation of separate and paraphernal property as such, action taken by the undercuratrix was for her benefit as well as for the benefit of the interdict's estate due to the fact that the undercuratrix was the interdict's heir. But even in those instances, the fact remains that such actions primarily were for the benefit of the estate. We also find that the services, with only one or two exceptions, were beneficial to the interdiction and that none of the services was intended to delay or impede the orderly proceedings thereof.
We are of the further opinion that appellant's second contention, that the fee of $7,000 is excessive, is not well-founded. There are many factors which enter into the fixing of an attorney's fee, no specific formula exists for such a determination, and each case rests on its own facts. Generally the considerations are: the responsibility incurred including the importance of the litigation; the extent and nature of the work performed; the success of the litigation; and the legal knowledge, experience and skill of counsel. Henriques v. Vaccaro, 218 La. 1020, 51 So.2d 611; Succession of Barrow, 176 La. 42, 145 So. 262; Wegmann v. Suggs, La.App., 147 So.2d 263; Succession of Franz, La.App., 133 So.2d 140. Although not necessarily controlling, expert opinion may be used as a guide. Succession of Franz, supra, and cases cited therein. And of importance here is the rule that where legal services are rendered under the eyes of the trial court, the judge thereof is fully able, and in a better position than is the appellate court, to estimate and judge the value thereof. Succession of Barrow, supra; Succession of Franz, supra, and cases cited therein.
Although we might have fixed a fee in an amount somewhat less than $7,000 had we been called upon to fix the fee originally, we cannot say that the amount set by the trial judge is excessive. Most of the services were rendered under his eyes and he was in a better position to determine their value than are we.
The judgment appealed from is affirmed.
Affirmed.