326 So.2d 621 (1975)
Maurice J. SCHAMENS, Plaintiff-Appellant,
v.
O. P. CROW, Defendant-Appellant.
No. 12705.
Court of Appeal of Louisiana, Second Circuit.
October 1, 1975.
On Rehearing February 9, 1976.
*622 Booth, Lockard, Jack, Pleasant & LeSage by Fred H. Sutherland, Shreveport, for plaintiff-appellant.
Thomas, Prestridge & Burchett by Dewey E. Burchett, Jr., Bossier City, for appellant, O. P. Crow.
Wilson & Veatch by Thomas A. Wilson, Shreveport, for appellant, Oliver Brooks, Inc.
Before PRICE, HALL and DENNIS, JJ.
Before PRICE, HALL, MARVIN and SMITH, JJ.
PRICE, Judge.
This is an action by the purchaser of a residence seeking a reduction in the purchase price from the vendor-builder because of alleged inadequacies in the design and capacity of the air conditioning system.
O. P. Crow, a builder and developer, contracted to sell to Maurice J. Schamens, a residence which was nearing completion at 1822 Pluto Drive in Bossier City for the sum of $34,925.00. Plans and specifications for the home had been approved by the Veterans Administration and construction was in accord with the regulations of this agency.
*623 During sales negotiations Schamens inquired if a utility room situated behind the kitchen could be connected to the air-conditioning system. Although Crow denies assuring Schamens this space could be properly cooled with the unit designed for the home, the air conditioning subcontractor was authorized to run a duct into this area.
Schamens accepted title to the property and moved into the home in February, 1972. During the following summer when the air conditioning system was needed, complaints were made by Schamens to Crow that the system was not properly cooling the residence. The air conditioning subcontractor who installed the system, Oliver Brooks, Inc., at Crow's request made several attempts to correct the situation. Again in the summer of 1973 Schamens continued to complain and Brooks continued to work on the system. In the late summer of 1973 Schamens employed a consulting air conditioning engineer, Keith L. Andrepont, who made an evaluation of the system and reported it was inadequate in capacity and design to properly cool the entire residence during periods of high outside temperature. He recommended the compressor and the air handler be replaced and certain modifications be made in the duct system to more properly distribute the flow of air to all parts of the residence.
Schamens thereafter in March, 1974, filed this action against Crow, seeking a reduction in the purchase price of $2,550.00, the amount alleged to be necessary to make the suggested changes. Plaintiff also seeks expenses, damages and attorney's fees in the sum of $2,815.00.
In answer to plaintiff's demands Crow denied liability and joined the subcontractor, Brooks, as a third party defendant, alleging that should he be held liable to plaintiff that he have judgment against Brooks for the same amount as he alleges Brooks contracted to provide an adequate air conditioning and heating system for the residence.
After trial on the merits the district court awarded plaintiff judgment against Crow for the estimated cost of correction, $2,550.00, and the sum of $315.00 paid for engineering services. Plaintiff's claims for damages and attorney's fees were denied. The expert witness fee of plaintiff's expert was fixed at $100.00. The court awarded judgment in favor of Crow on his third party demand against Brooks for these same amounts.
Plaintiff has appealed from the judgment insofar as it denied his claim for damages and attorney's fees and asks that the expert witness fee of Andrepont be increased.
Crow and Brooks have each appealed the judgment rendered against them, asserting the trial judge was in error in concluding on the basis of the evidence presented that plaintiff had shown the air conditioning system was inadequate.
On appeal third party defendant Brooks filed an exception of prescription of one year under La.C.C.Art. 2534.
We find no merit to the plea of prescription. Although more than one year elapsed from date of the sale and the filing of plaintiff's suit, there were numerous attempts by the seller, through his subcontractor Brooks, to correct the defects complained of which continued through the late summer of 1973. The jurisprudence provides prescription does not begin to accrue until the seller has abandoned all atempts to repair the defect, de la Houssaye v. Star Chrysler, 284 So.2d 63 (La.App. 4th Cir. 1973), writ refused 286 So.2d 662 (La.1973); Domingue v. Whirlpool Corp., 303 So.2d 813 (La.App. 3rd Cir. 1974).
The exception of prescription is therefore overruled.
*624 The issues raised by the appeals of defendant Crow and third party defendant Brooks are substantially the same and relate to the correctness of the trial judge's finding that there was a vice in the thing sold to plaintiff which entitled him to a reduction in the purchase price. We shall discuss this issue first as the liability of Brooks on the third party demand and the remaining issues raised by plaintiff's appeal relating to damages and attorney's fees hinge on an affirmance of this finding of the trial judge.
Whether or not the air conditioning system was adequate is primarily a question of fact and the trial judge's finding in this regard should not be disturbed if there is substantial evidence in the record to support his conclusion.
There is no question raised in regard to the mechanical performance of the component parts of the air conditioning system. The issue is whether the air conditioning requirements of the subject residence were properly calculated and the appropriate size unit was selected to satisfactorily cool the residence in accord with the standards set forth by the Veterans Administration.
Plaintiff contends the system performs properly when outside temperatures are below 90 but when the temperature goes beyond 90 the system does not cool the living area of the house to a bearable temperature. This area consists of the kitchen, living room, one bedroom and the utility room.
Crow and Brooks contend the primary cause of plaintiff's dissatisfaction is the inclusion at his request of the utility room in the air conditioning system of the house. They contend the system as installed was sufficient to take care of the original plans and specifications and that plaintiff was informed that it might not be sufficient to cool the added area. The evidence is somewhat conflicting as to what assurance plaintiff was given in this regard. He testified Crow told him he checked with Brooks and Brooks said it probably would carry the utility area except when the laundry appliances were being used. Crow testified he told plaintiff it would heat the area but could not assure him it would cool it. Brooks testified he told Crow he could not guarantee the cooling of this added area.
We do not find it necessary to resolve this conflict as the evidence otherwise indicates the unit was inadequate for the residence without consideration of the utility room.
In support of his position plaintiff offered the testimony of the expert in air conditioning engineering, Keith L. Andrepont, who made a detailed analysis of the air conditioning requirements of the residence, using the standards set forth in "Manual J" of the National Environmental System Contractors Association, which is the accepted manual for calculating air conditioning needs for VA approved homes. This manual requires a system which has the capacity to reduce the inside temperature to 75° when outside temperatures are 100°.
Andrepont calculated the heat load of the subject residence to be 37,407 BTUH's. In his opinion the minimum capacity for a unit to cool the home would be above 37,407 BTUH's.
Defendants offered the testimony of George Jambor, also a consulting air conditioning engineer, who tested and evaluated the system at the request of Brooks. In calculating the heat load of the house he used another recognized manual referred to in the testimony as "ASHRAE". He concluded the heat load of the residence, not including the utility room, was 33,211 BTUH's.
Andrepont gave consideration to the utility room in making his calculations but was of the opinion the system was inadequate without inclusion of this area.
*625 In his reasons for judgment the trial judge, in according more weight to the opinion of Andrepont than defendant's expert, Jambor, was influenced by the fact that Jambor made his inspection of plaintiff's premises on a day when the outside temperature area was only 84 and that Jambor admittedly did not follow the provisions of the "ASHRAE" Manual in all phases of his calculations.
The trial judge further found it significant that Brooks admittedly was in error in two respects when he calculated the air conditioning requirements for this residence(1) in assuming the house would face East whereas it was constructed facing North, and (2) calculating the floor space as a three bedroom home when the house actually has four bedrooms.
From our review of the record we find there is substantial evidence to support the finding of fact by the trial judge that the system was inadequate in design and capacity.
No issue has been made in regard to the amount awarded to correct the system as estimated by an air conditioning contractor. Furthermore, the trial judge was also correct in allowing Crow to recover over against Brooks as the evidence shows Brooks regularly performed all of the air conditioning installation for Crow's construction and that Crow relied entirely on the expertise and knowledge of Brooks in calculating air conditioning requirements.
Plaintiff is asking for damages because of the inconvenience and embarrassment experienced by his family due to excessive temperatures during the summers of 1972, 1973 and 1974, for attorney's fees and for an increase in the expert witness fees.
Civil Code Article 2531 provides what recovery is allowed a purchaser who successfully brings an action against a good faith seller. Damages for inconvenience and embarrassment and attorney's fees are not included within the provisions of this article. The plaintiff bases his request for damages and attorney's fees on Civil Code Article 2545. As amended by Acts 1968, No. 84, Sec. 1, this article now allows these claims against a seller ". . . who knows the vice of the thing he sells and omits to declare it. . ." However, we are of the opinion the defendants in this case were not aware that the system contained any defect and we conclude that where the seller is in good faith, he is not liable for damages in addition to the restitution of the price and repayment of expenses. Domingue v. Whirlpool Corporation, 303 So.2d 813 (La.App. 3rd Cir. 1974). We recognize that there is jurisprudence holding that a manufacturer is presumed to have knowledge of a vice in the thing sold and thus is liable for damage under Article 2545. However we are of the opinion the builder of a residence for sale on the market does not fall within the definition of a "manufacturer" as this term is used in this line of cases, and plaintiff must therefore submit proof of bad faith to hold the seller in damages.
The trial court awarded plaintiff $100.00 as an expert witness fee for Andrepont. The trial court is given much discretion in setting the expert witness fees, after determining the degree of skill of the witness, the amount of time spent away from his job, along with actual time spent in court. We do not feel that the amount granted in this case was inadequate, or that the trial judge abused his discretion in the determination of the fee.
For the foregoing reasons we affirm the judgment of the trial court.
DENNIS, J., dissents in part and concurs in part with written reasons.
DENNIS, Judge (concurring in part and dissenting in part):
I respectfully dissent from the portion of the majority opinion holding that a builder *626 of a residence for sale on the market does not fall within the definition of a manufacturer for purposes of redhibitory actions under Civil Code Article 2545. There is no basis in law for granting residence builders immunity not enjoyed by the constructors, makers, fabricators, assemblers and manufacturers of other products.
In all other respects I concur in the majority opinion.

ON REHEARING
MARVIN, Judge.
A rehearing was granted on plaintiffappellant's application, particularly as concerns the statement in our original opinion that the builder of a residence for sale on the market does not fall within the definition of "manufacturer . . . and plaintiff must therefore submit proof of bad faith to hold the seller in damages."
On reconsideration we find that the weight of authority is contrary. The applicable legal principle was stated in Doyle v. Fuerst & Kraemer, Ltd., 129 La. 838, 56 So. 906, 907 (1911) in this language:
The principle which governs this case is that every one ought to know the qualities, good or bad, of the things which he fabricates in the exercise of the art, craft, or business of which he makes public profession, and that lack of such knowledge is imputed to him as a fault, which makes him liable to the purchasers of his fabrications for the damage resulting from the vices or defects thereof which he did not make known to them and which they were ignorant of.
We acknowledged the principle and the authorities in Johnson v. Hunter, 88 So.2d 467 (La.App. 2nd Cir., 1956), holding that a building contractor who constructs for the purpose of sale a residence is presumed to have notice and knowledge of the defects in its construction. See also Daly v. Abramson, 117 So.2d 772 (La.App. 2nd Cir., 1960).
In Cipriano v. Superior Realty & Construction Corp., 228 La. 1065, 84 So.2d 822 (1956) a heating system was held to be as much a part of a residence as the foundation or roof, covered by the vendor-constructor's warranty, whether express or implied. Here, the defendant as the vendor-constructor of the residence, warranted the sale of the residence as being adequately heated and cooled by the unit installed. On original hearing, the majority of this court found that the unit's capacity was insufficient to cool the residence. This insufficiency, a vice of construction existing prior to sale, renders the house defective. Knowledge of this defect must be imputed to Crow. See also Tuminello v. Mawby, 220 La. 733, 57 So.2d 666 (1952), where knowledge of defects was imputed to a builder-vendor of a residence.
La.C.C. Art. 2545 is therefore applicable notwithstanding the absence of actual knowledge of the defect or the absence of proof of bad faith on the part of the builder-manufacturer.
The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorneys' fees, is answerable to the buyer in damages.
Domingue v. Whirlpool Corp., cited in our original opinion, can be factually distinguished, and is not controlling. Attorney fees and damages should have been awarded plaintiff-appellant. As the record contains evidence which would allow a fixing of these items by the court a quo, we shall exercise our discretion and fix the same rather than remand.
In Sokol v. McKinnon Chevrolet, Inc., 307 So.2d 404 (La.App. 4th Cir., 1975), the factors to be considered in fixing attorney fees in a redhibition or quanti *627 minoris case were said to be the responsibility incurred, the extent and the nature of the work performed, the legal knowhow and skill of counsel.[1] Considering the amount of recovery allowed, the time spent by plaintiff-appellant's counsel below and on appeal, and the other factors mentioned, we award $1,250.00, with legal interest from the date this judgment becomes final. See Sugar Field Oil Co. v. Carter, 214 La. 586, 38 So.2d 249 (1949).
Plaintiff and his family suffered some inconvenience, deprivation, and embarrassment because of inadequate air conditioning. In addition to the amount awarded originally as expenses, we award plaintiff damages of $300.00, with legal interest from judicial demand.
The applicant also complains on rehearing that the expert witness fee, as determined below and affirmed in our original opinion, was not commensurate with the time and services expended, and billed to plaintiff, by the expert. In addition to the award of $100.00 as an expert witness fee, plaintiff was awarded $315.00 for the engineering services charged for by the expert. The fixing of the expert fee under the circumstances does not amount to an abuse of the discretion afforded the lower court in such matters.
Our original opinion is amended to the extent stated, affirming the award of the lower court, and additionally we grant judgment to the original plaintiff against the original defendant and in favor of original defendant, as third party plaintiff, and against third party defendant for $300.00 damages, with legal interest from judicial demand and for $1,250.00 attorney's fees, with legal interest from the date this judgment becomes final.
Amended, and as amended, our original opinion is reinstated and the judgment below as herein amended is affirmed.
NOTES
[1] Authorities there cited included Henriques v. Vaccaro, 218 La. 1020, 51 So.2d 611 (1951).