HENRY F. TURNER, Judge pro tem.
In this case plaintiff, Edward F. Weg-mann, an active practitioner of the profession of law, filed suit against a former client for attorney’s fees in the full sum of $12,500, subject to a credit of $521.63. The defendant in the case admits the rendition of the services to her by the plaintiff, but contests the amount. She claims that although she owes Mr. Wegmann a fee, the amount claimed is exorbitant, far in excess of the value of the services rendered. She also seeks a reduction in the amount of the fee of $250 awarded to the curator ad hoc appointed by the court to represent her in these proceedings, she being at the time a resident of the State of Texas.
On the trial of the case Mr. Wegmann offered testimony as to the extent of his services which can best be summed up by quoting the hypothetical question asked to disinterested lawyers of the bar of Jefferson Parish with regard to their opinion, as experts, as to the value of such services. The question asked reads as follows:
“a. The attorney has been practicing law in New Orleans, Louisiana, since completion of law school in 1941 (with the exception of service with the U. S. Navy during World War II) ; he was formerly a senior partner in one of the more prominent law firms, was and is practicing individually with an attorney associate-employee; maintains offices in the National Bank of Commerce in New Orleans, with the usual secretarial employees, maintains an adequate law library; that the attorney has considerable experience and training in this particular field of law.
“b. The attorney-client relationship was established some time prior to the divorce action being filed but no legal fees had been charged as a result of the prior consultations;
“c. The ‘client’ is the former wife of Robert L. Suggs, a financially successful businessman;
“d. The representation became ‘active’ with the filing of a suit for divorce on behalf of ‘client’ on August 27, 1958, in the 24th Judicial District Court of the Parish of Jefferson under Docket #47-577; that these proceedings were demanding, time-consuming *265 and extremely unpleasant because of the nature of the charges, counter charges and personal habits of client.
“That the legal fees for the divorce proceeding has been fixed and paid; that the attorney sought and obtained payment of said fee by the former husband of the client. The fee paid was $3,500.00, with the specific understanding that the fee pertained only to the divorce representation and did not include other phases.
“e. That attorney obtained a full disclosure of the assets of Suggs without the necessity of a public inventory and its resulting notarial and appraiser costs.
“That the client had personal habits including an alcohol problem, which made her a demanding, difficult and unpleasant individual to represent;
“That the attorney, in furtherance of his representation, had almost daily contact with the attorneys representing the husband; that this almost daily contact consisted of lengthy (some 2 to 3 hour) conferences, both in his and opposing counsel’s offices, almost daily lengthy phone conversations, detailed and lengthy conferences with the accountants representing the interests of the husband;
“That the husband’s holdings were extensive, including numerous closely held corporations such as Petroleum Heliocopter, Inc., Offshore Navigation, Inc., etc.
“That his representation included obtaining, studying and digesting the charters and/or articles of incorporation of these closely held corporations;
“That the attorney sought and obtained representation on the Board of Directors of the corporations where he individually represented his clients interest; that he was acceptable to opposing counsel whereas client was not;
“That said appointments were time-consuming in that they required him to become and remain conversant with the business affairs of the corporation; that the attorney was required to study and digest in detail the balance sheets, and fiscal reports of the said corporations ;
“That'the attorney employed an accounting firm (J. K. Byrne & Co., C. P.A. of New Orleans) to assist him in representation that the cost of this firm’s service is the fiscal responsibility of attorney;
“That he conferred with a senior partner of said accounting firm to obtain his assistance in interpreting and analyzing the various financial reports, preparation of Federal and State Tax returns, etc.
“That attorney, prior to discharge, obtained a partial dissolution of the community and obtained for client certain specific items and/or admissions such as:
“1) A community asset was real estate designated as #340 West Livingston Place; under a written lease negotiated by the attorney, the client is paid $250.00 per month (beginning Oct. 1, 1958) until Sept. 30, 1969; that this is a ‘net’ lease with all costs of maintenance, taxes, insurance, etc., being paid by Suggs; on the termination thereof, client retains her interest in the property; a total rental of $33,-000.00;
“2) An admission that certain stock and investments of Suggs were community and not separate assets as maintained by Suggs; that these assets formed a substantial part of the community estate.
“3) The services included a detailed' accounting of the administration of community assets commencing with the: *266 filing of the suit and continuing to the time of his discharge;
“4) The services included the securing of an admission as to community interest in substantial life insurance contracts and policies originally claimed as separate property by Suggs;
“5) The services included determining that certain substantial ‘gifts’ had been made to the children and obtained an admission that these gifts formed part of the community;
“That despite the fact that the trial court awarded the custody of the minor children to their father, attorney obtained and maintained liberal custody privileges, including the right to use the family home for the purpose of visitation ;
“That the client demanded and obtained attorney’s personal attention, including frequent night and weekend conferences; that these conferences were primarily telephone conferences which were lengthy and without regard or consideration for the attorney’s business and/or private life.
“That the client spent a good deal of time away from the City; during which time she engaged in lengthy and frequent correspondence; that this correspondence required written responses; that she frequently called long distance collect and spoke for long period relative to her business.
“Attorney’s office files reflect almost daily activity in the form of conferences, telephone calls and/or correspondence.
“That the value of the community in dispute exceed $800,000.00; and client received and physically delivered to her, as a result of the partial dissolution, assets which had a value in excess of $300,000.00.
“That the termination of employment was provoked by client and without payment of a fee;
“That the attorney estimates (no actual time sheets are kept by this attorney) that he devoted a minimum of 500 fee-earning hours to the representation ;
“That the attorney enjoys a substantial law practice and the time devoted to this cause was not available in furtherance thereof.
“That the representation exceeded a period of twelve (12) calendar months.”
Counsel for defendant in argument frankly stated that the defendant did not refute one word of the testimony with regard to Mr. Wegmann’s services, but simply refuted the amount of the bill rendered. That issue and the question of attorney’s fees for the curator ad hoc pose the only two questions at issue in this case. The district judge found for the plaintiff as prayed for and fixed the curator’s fee at $250. While counsel for defendant in brief mildly contests the award to the curator, in oral argument he made no mention of this. From the evidence appearing in the record, it appears that the amount of $250 for the curator in this case is in line with the value of the services rendered and will not be disturbed.
The district judge in his well-considered opinion assigned reasons for allowing the full amount of the bill. The facts in the case show that plaintiff had previously represented the defendant in a divorce proceeding for which he had been paid the sum of $3,500. The record shows that Mr. Wegmann continued to represent her following the divorce in all legal matters, particularly the settlement of the community formerly existing between defendant and her former husband. The evidence shows that plaintiff had the responsibility of effecting a settlement of a community *267 which was estimated to he in excess of $800,000. This representation and the duties connected therewith continued over a period of many months and resulted in plaintiff’s securing for defendant assets in excess of $300,000. The defendant in the case became impatient and evidently thought that Mr. Wegmann was not pushing as hard as he should to bring the matter to a conclusion and wrote him a letter which amounted to a discharge, suggesting that since he was personally familiar with the persons involved, she thought that a stranger could more expeditiously conclude the matter. Mr. Wegmann acknowledged his discharge and billed the defendant for $12,500.
Counsel for defendant points out that there was no court work nor appearances in court in connection with Mr. Wegmann’s handling of Mrs. Sugg’s business. In our opinion that should in no wise detract from or penalize plaintiff. We think it is to the credit of lawyers to get together and avoid lengthy and expensive litigation where possible without surrendering any substantial rights of their clients. The courts encourage this. The record in this case reflects that by staying out of court .a considerable amount of money in the amount of appraisers’ fees, notary’s fees, etc., in preparing and homologating an inventory were avoided. The record further reflects that through the efforts of plaintiff substantial assets which were in the process of being withheld from the community mass were returned, thereby enhancing defendant’s interest in the amount of thousands of dollars.
Counsel for defendant has pointed out that at one stage of the proceedings plaintiff stated that he would accept $8,500 in settlement of his claim, and on another occasion he would accept $10,000. Of course the courts look with favor upon compromises and encourage same. Testimony as to efforts of compromise not acted upon should not be considered by the courts. To hold otherwise would be to discourage litigants from attempting to effect settlements, without the necessity of lengthy and expensive litigation in court. Once the plaintiff has submitted his bill, however, he cannot enlarge upon it. Carey v. Sentell, La.App., 64 So.2d 451.
Fixing fees for legal services for general work done over a period of time, in the absence of a stated price or contract, poses a most perplexing problem for practicing attorneys. We are personally aware of the fact that different law firms, partnerships, and individual practitioners use various methods by which they determine the amount to be charged for their services. Some use the time sheet method, some use a flexible standard price for particular types of practice, bar association minimum fee schedules, and others just pull a figure out of the air which they feel is proper and in keeping with charges generally made by the profession. Various bar associations throughout the State have adopted minimum fee schedules which most attorneys use as a guide in fixing their fees. Of course these schedules are flexible and usually have the provision that the fee can be adjusted upward where intricate and time-consuming problems are involved.
A lawyer’s time and mental attributes based on his education, experience, knowledge of the law and ability generally are to be considered in the fixing of fees. As we have previously stated, there is no quarrel with Mr. Wegmann as to his ability and quality of services rendered in this case despite the fact that defendant saw fit to discharge him for the apparent reason that she thought he was procrastinating or unnecessarily prolonging the conclusion of her business.
In considering the value of her lawyer’s services, it is necessary to consider the intricacies of the problems involved and the responsibility incurred as to the amount and legal aspects of the case. Each case in which an attorney calls upon the court to fix and uphold his fees depends upon the facts and merits involved in that particular case.
*268 Experts on problems or matters involving a particular training or knowledge are called upon to testify as to their opinion regarding their particular trade, calling or profession in an attempt to assist the court in arriving at a proper decision in the case. They are not called upon, however, to' decide the case for the court. In a case of this kind the judge is in the peculiar situation of being more or less of an expert in his own right. Under the Constitution the district judge shall necessarily have actively practiced law for a period of five years, and we feel that a poll of the sitting judges of the State would show that they have considerably more experience than the five years required. In their practice, of course, they have had matters involving the fixing of attorney’s fees and for that reason are in a better position to pass upon a case of this type than if it were a case involving medical experts’ testimony. In the present case two disinterested members of the Jefferson Parish bar, with ample qualifications to appraise the value of services set forth, in the hypothetical question propounded to them, testified that in their opinion the fee allowed by the district judge was reasonable and proper. The defendant in the case called another prominent, qualified practicing attorney who testified to a lesser amount, but his testimony was based upon a somewhat different and more or less restricted hypothetical question than that propounded to the experts testifying for the plaintiff. Counsel for the defendant has cited the case of Succession of Franz, La.App., 133 So.2d 140, where this court allowed a fee of approximately $18,000 to two attorneys for their services in a case involving a succession. We have examined the facts in that case and find them entirely different from those in the case now before us.
In this case, since there is no dispute on the facts, the district judge, after a careful consideration of all items involved in this particular case, reached the conclusion that the fee of $12,500 charged was reasonable and proper. We are not inclined to substitute our judgment herein for that of his. Counsel for defendant has outlined his reasons in suggesting a much smaller fee. In argument he made a statement which would more or less put attorneys on a timeclock basis and pay them wages as an ordinary wage earner at so much per hour. As previously stated, many lawyers do not subscribe to an hour or time basis, and we find no authority which would require them to. The hourly basis in our opinion does not take into consideration the many hours spent in thinking about the case, once you have the facts in your mind, and seeking a solution even in the waking hours of the night.
It is therefore our view that under the facts of this case, the amount of money involved and the success of the plaintiff in handling defendant’s business, the judgment of the lower court is affirmed.
Affirmed.